MARVIN A. YOUNGS, as administrator of estate of Bernice Mildred Youngs, deceased, appellee, v. JOHN FRANCIS FORT et al., appellants.

No. 50226.

(Reported in 109 N.W.2d 230)

MAY 2, 1961.

F. J. MacLaughlin, of Davenport, for appellants.

Lambach, Shorey & Plath, of Davenport, for appellee.

SNELL, J.—This is an action resulting from a collision of motor vehicles at the intersection of Kimberly Road and Jersey Ridge Road in the suburban area of Davenport.

Jersey Ridge Road runs north and south with stop signs requiring traffic to stop before crossing Kimberly Road.

Kimberly Road runs east and west with a statutory speed limit of 45 miles per hour.

As a result of the collision, Bernice Mildred Youngs died. She will be referred to as the decedent. The plaintiff is the administrator of her estate.

On the late afternoon of October 23, 1956, decedent, together with her husband's parents, was in an automobile owned by her father-in-law proceeding north on Jersey Ridge Road. It will be referred to as the Youngs car. The car stopped and remained standing for some time at the stop sign on the southeast corner of the intersection and then suddenly started forward across the intersection.

At the same time a car registered in the names of John Francis Fort and James Lee Connell was approaching from the east on Kimberly Road. The car was driven by James Lee Connell, a young man slightly less than 18 years of age. Because of his age the car was registered in his name and the name of his prospective father-in-law.

The Youngs car and the Connell car collided in the northeast quarter of the intersection. The front of the Connell car struck the right center of the Youngs car. The impact forced the Youngs car across the intersection to the northwest edge thereof and the Connell car to the west part of the intersection and facing east. The front of the Connell car was severely crushed. The right side of the Youngs car was demolished, the top of the car collapsed upward and supporting posts were broken. Decedent was trapped in the back seat of the car to such an extent that it took four men to pull the seats and cushions away sufficiently to permit her removal from the car. The decedent died shortly after the collision. Her parents-in-law were thrown from the car and killed.

Plaintiff alleged in his petition that decedent was riding as a passenger. The case was tried to a jury on that theory. The trial court instructed the jury accordingly and no exceptions were taken to such instructions. In argument defendants now suggest that it is a matter of conjecture whether she was a guest, mere passenger, driver or otherwise. We will refer to this in a subsequent division.

I. The trial court submitted to the jury two specifications of negligence against defendants: (1) In operating said vehicle at a speed in excess of the statutory speed limit of 45 miles per hour; and (2) in failing to have the defendants' vehicle under control in violation of the statute.

At the close of plaintiff's evidence and after both sides had rested and after the verdict, the defendants made all the usual motions for directed verdict, judgment notwithstanding the verdict and for a new trial.

The only exceptions to the instructions were to the submission of the two specifications of negligence. The other instructions, and the correctness of the law as set forth therein, were not challenged.

The jury returned a verdict for plaintiff and against defendants. Our problem is the sufficiency of the evidence to support the submission of the issues to the jury.

After the instructions had been read to the jury and before the jury retired to deliberate, one of the jurors asked the court if he could ask a question, and in response to an affirmative answer, the juror stated, "May I ask if there is any insurance in this case?" To which the court responded, "That is a matter that you cannot consider." As soon as the jury had retired, the defendants moved for a mistrial because of this question and answer. The motion for mistrial having been overruled, defendants now urge reversal by virtue thereof.

II. Plaintiff's evidence as to defendant's speed was circumstantial. Was it sufficient for submission to the jury? The statutory speed limit on Kimberly Road was 45 miles per hour. The court so instructed the jury. When defendant saw the Youngs car start across the intersection he applied his brakes. Skid marks from beginning to where the car stopped after the collision had a total length of 92 feet. Defendants' car swung around after the impact and the 92 feet include about 15 feet made after impact. The Youngs car traveled 24 feet after the impact to the shoulder of Kimberly Road slightly west of the intersection. The condition of the Youngs car after the collision, as described by witnesses and as shown by pictures received in evidence, indicated that it was struck with terrific

force. The right center was crushed in. The top was crushed up to a peak. From the front, it appeared bent from a straight line into a V-shape. A city patrolman testified that he examined the car on both sides and the force of the impact was so great that the left side had both doors sprung open and the center post, which separates the front and rear doors, was extended straight out from the top "which gave it the appearance like you would take a milk carton and break it half in two." An eyewitness said, "The Youngs car just seemed to bounce in the air and bounced along until it came to rest on the shoulder." Two people were thrown from the car and killed instantly. Decedent was wedged in the back seat so that it took four men to extricate her. She died in a few minutes.

To rebut such conclusions as might be drawn from circumstances, the defendants offered three witnesses. The defendant-driver testified traffic on Kimberly Road was moving at 45 miles per hour or less. He estimated his speed at about 40 miles per hour. A Mr. Kinner, from his car at the stop sign north of the intersection, saw the approaching cars and collision. He said defendants' car "was just traveling at normal speed compared with other cars on the highway." A Mrs. Wilson, in her car turning left at the intersection, saw defendants' car approaching. She estimated defendant's speed at 40 to 41 miles per hour. After turning, Mrs. Wilson was facing away from the intersection but saw the collision through her rearview mirror. In argument the parties discuss the questions of distance, actual and relative speeds, time expressed in seconds and the conclusions to be reached therefrom. Undoubtedly these theories were presented to and considered by the jury. It is not for us to pass upon the weight and credit of the evidence. There were questions of fact from which reasonable minds might draw varying conclusions, and the determination was for the jury.

III. In relying on circumstantial evidence, plaintiff's case "must be supported by evidence such as to make her theory of causation reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence. * * * But this means only the evidence must be such as to raise a

jury question within the limits of the foregoing rule; it need not be conclusive. * * * disputed questions of fact from which reasonable minds might draw varying conclusions are for the determination of the jury." Hackman v. Beckwith, 245 Iowa 791, 795, 64 N.W.2d 275, 278, and cases cited therein.

A case for the jury may be made by circumstantial evidence, notwithstanding contrary direct evidence for defendant. Soreide v. Vilas & Co., 247 Iowa 1139, 1149, 78 N.W.2d 41.

"We are committed to the rule * * * that speed may be proven by circumstantial evidence and that such evidence may be sufficient to overcome direct evidence as to speed. * * * We have also said that in most cases the question of speed must be determined from the circumstances." Davidson v. Vast, 233 Iowa 534, 540, 10 N.W.2d 12, 16.

Paulsen v. Haker, 250 Iowa 532, 536, 537, 95 N.W.2d 47, 50, discloses a factual situation with many similar details. In that case, as in this, there was testimony that the car in which decedent was riding "darted" into the intersection in front of defendant. In that case we said:

"Two basic questions are involved in this appeal: first, was a jury question engendered on the issue of the negligence of * * *, the driver of defendant's car; and second, was there sufficient evidence of the freedom from contributory negligence of * * *, plaintiffs' decedent, to warrant submission of this issue? We are not concerned here with the burden of proof on either of these points, but only with the sufficiency of the evidence to raise a jury question upon one or both. We shall first consider the matter of the showing of the negligence of the defendant driver.

"We are not here concerned with the negligence, if any, of the driver of the [car in which decedent was riding], unless it was the sole cause of the accident so that no negligence of the defendant * * * concurred therein. Law v. Hemmingsen, 249 Iowa 820, 826, 89 N.W.2d 386, 391. And the principle, that when we are considering the propriety of a ruling upon a motion for directed verdict the evidence must be taken in its aspect most favorable to plaintiff it will reasonably bear, is so well settled that citation of authority is needless. * * *

"* * * 'Therefore the operator of a vehicle on a through highway may not, notwithstanding his superior right of way, rely blindly upon an assumption that the operator of a vehicle on an intersecting road or street will obey the law; he must be reasonably vigilant to observe traffic conditions on the intersecting highway * * *.' "

While the Paulsen case was reversed on grounds referred to in a subsequent division hereof, it held there was a jury question on the issue of negligence.

In the present case the issue is very close. It is not entirely free from doubt. We conclude, however, that there was a question for the jury. The jury has answered. We are not inclined to interfere.

IV. The specific charge of negligence submitted to the jury was based on the statutory speed limit of 45 miles per hour in suburban districts. There may be negligence even though the speed is less than the statutory maximum. Richards v. Begenstos, 237 Iowa 398, 21 N.W.2d 23.

While this question was not submitted to the jury specifically, it would be involved in the question of control.

V. The second specification of negligence submitted dealt with defendant's control of his car. The wording of the instruction is not questioned. The defendants excepted to its submission as unsupported. Much that we have said in Division II also applies to control.

While some distance away, defendant saw two cars stopped on the intersecting inferior road, one on each side. Both cars were too close to Kimberly Road for compliance with the statute. As said in appellee's argument, the Youngs car "only two feet from the edge of the highway, was poised on the brink of what turned out to be disaster." Defendant did nothing to reduce his speed in approaching the intersection at which there was in sight a potential hazard. The defendant did nothing until too late. What obviously might happen did happen. The question of control was for the jury.

VI. If the jury found from the evidence that the driver of the Youngs car was negligent, was such negligence the sole proximate cause or merely a concurring proximate

cause? The jury was instructed on this question and no exceptions were taken. The instruction was not vulnerable to attack. The rules as to concurrent negligence are set forth in Iowa Uniform Jury Instructions Annotated, published by the Iowa State Bar Association. We quote from No. 2.8: "Where two causes, both of which are in their nature proximate, combine to produce an injury or damage, one of which is attributable to one person and one of which is attributable to another person, both may be proximate, and if so, the extent to which the damage is attributable to the different causes is immaterial." The question of proximate cause is ordinarily one of fact for the jury. A finding of proximate cause does not necessarily follow a finding of negligence. However, in an intersection case such as this, where the jury could have found concurring negligence, it follows that the jury could also have found proximate cause. We cannot interfere.

VII. The three persons in the Youngs car were killed. No one saw who was driving. No one knows what plaintiff's decedent did or said. Plaintiff alleged and the case was tried on the theory that plaintiff's decedent was a passenger. The trial court instructed the jury on that theory. No exceptions were taken to such submission. Defendants may not now object.

VIII. The negligence of the driver of the Youngs car would not be imputed to plaintiff's decedent but plaintiff had the burden of showing decedent's freedom from contributory negligence. Paulsen v. Haker, supra. In the Paulsen case, as here, there was no showing as to the conduct of decedent. The no-eyewitness rule was not invoked nor submitted. Because of plaintiffs' failure to offer anything to sustain their burden, the case was reversed. Here plaintiff laid the foundation and invoked the rule. The court instructed thereon. No exceptions were taken. With the aid of the inference of the no-eyewitness rule, decedent's freedom from contributory negligence was a question for the jury. For discussions of the no-eyewitness rule, see 43 Iowa Law Review 57 and 6 Drake Law Review 101.

IX. Defendants seek reversal because of alleged misconduct of a juror in inquiring about insurance. The court correctly and properly answered, "That is a matter that you

cannot consider." To have answered otherwise would have been error. Every lawyer experienced in the trial of personal injury cases knows that jurors think, speculate and discuss the question of insurance. This is inevitable. It is common knowledge that insurance coverage is the rule rather than the exception. The best answer to wild speculation is the truth. There was no error in the juror's question nor the court's answer. Prejudicial error does not follow from a correct statement appropriately made. Jurors are not so easily misled. Connelly v. Nolte, 237 Iowa 114, 132, 21 N.W.2d 311.

We find no reversible error.

The case is—Affirmed.

All Justices concur.