**Reba Ann Hester, by Roy Hester, Her Father and Next Friend, Plaintiff-Appellant, v. Robert Goldsbury, Boye Needle Company, a Corporation, and Patricia Norton, Defendants-Appellees.**

**Gen. No. 49,569.**

First District, Fourth Division.

September 24, 1965.

Winston, Strawn, Smith & Patterson, of Chicago (Douglas C. Moir and John T. Perry, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel), for Robert Goldsbury and Boye Needle Company, appellees; Jacobs and Mc-Kenna, of Chicago (William J. McKenna and Barry L. Kroll, of counsel), for Patricia Norton, appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

This is an appeal from a judgment entered upon a jury verdict in favor of defendants in plaintiff's action to recover damages for personal injury occasioned by the alleged wilful and wanton conduct of defendant Patricia Norton and the alleged negligence of defendant Robert Goldsbury.

Plaintiff was a passenger in the Norton car when it was struck by Goldsbury's car. It is her contention that the verdict was against the manifest weight of the evidence, that the trial court committed prejudicial error in refusing to allow plaintiff and another passenger in her car to testify that Goldsbury's car was going "fast," and that it was also error to have admitted Goldsbury's exhibits as evidence of the traffic light sequence at the junction where the accident occurred.

The collision occurred near, but not in, an involved scissors-type intersection where River Road (north-south) and Rand Road (northwest-southeast) converge and form a single wide strip for a short distance and then separate. Other streets flow into this intersection, but to describe their position would detract from rather than assist in the understanding of the facts necessary to resolve the issues before us.

The manner in which the accident occurred is not in dispute. Plaintiff was one of three high school classmates

68

who were driving to a hamburger stand after school to get something to eat. All three girls were seated in the front seat of the car, with defendant Norton driving, witness Ericson in the middle, and plaintiff next to the door. They were driving in a northwesterly direction on Rand Road, approaching the point where Rand and River Roads converge. Approximately 100 feet before the actual convergence, there is a cut-off to the left (Harding Street) whereby a car may proceed west from Rand Road and continue across River Road.

Defendant Norton testified that she turned left from Rand Road onto this cut-off and stopped at a stop sign located on a triangular island between the scissors handles of Rand and River Roads. (Plaintiff said Norton "slowed way down" but she could not say definitely whether she did or did not stop.) Traffic was standing still in the two northbound lanes of River Road both north and south of the Harding Street crossing because of a red light situated at the large intersection on the northern end of the afore-mentioned island. There was, however, an opening in the stationary northbound traffic on River Road sufficient to allow the westbound Norton car to pass. Norton further testified that, after making her stop, she moved through this opening at a speed of approximately 5 miles per hour. (Plaintiff said the car was going about 10 miles per hour and witness Ericson said the car was going about 5 miles per hour.) Norton's vision of traffic in the south-bound lanes of River Road was impaired, however, by the stationary cars in both northbound lanes. Taking note of traffic in all directions, according to Norton, she con-tinued forward at a slightly accelerating speed and en-tered the southbound lanes where she was then struck broadside by the car of the defendant Goldsbury who, on a green light at the large intersection, was proceeding south on River Road at about 25 miles per hour.

■■ Plaintiff's principal contention is that the con-duct of defendant Norton was wilful and wanton, and

69

that the jury's verdict to the contrary was against the manifest weight of the evidence. With this we cannot agree. Before a jury verdict may be overturned as contrary to the manifest weight of the evidence, it must be determined by the reviewing court that the decision was palpably erroneous and wholly unwarranted, or that an opposite result was clearly evident. Vasic v. Chicago Transit Authority, 33 Ill App2d 11, 11e, 180 NE2d 347. Given the undisputed testimony of the defendant Norton that she came to a full stop before entering the intersection, that she looked both ways before entering the intersection, that her view was partially blocked by stationary cars, that her speed was approximately 5 miles per hour, that she was hit while barely a car length into the inner southbound lane and that the intersection itself is complex, we cannot say that the jury's verdict was against the manifest weight of the evidence.

With respect to defendant Goldsbury, plaintiff does not claim that the verdict was contrary to the weight of the evidence, but charges that the trial court committed prejudicial error in striking testimony that defendant's car was going "fast." Both plaintiff and witness Ericson were asked whether they had an opinion concerning the speed of Goldsbury's car and they had answered that it was going "fast."

An estimate by a witness that a vehicle is travelling "slow" or "fast" is admissible, although he is unable to state the speed in miles per hour. McKenna v. Chicago City Ry. Co., 296 Ill 314, 322, 129 NE 814. The extent of the witness' observation of the vehicle (which in the instant case was very slight, indeed), goes to the question of weight and not admissibility. Fuhry v. Chicago City Ry. Co., 239 Ill 548, 549, 88 NE 221.

Both defense counsel in this court argue, in support of the trial court, that the testimony as to "fast" speed was properly stricken in each instance because it

was not responsive to the question asked. This argument is untenable since in neither case was the objection raised by the questioning counsel, the only one with standing to make such an objection. An attorney who is not conducting the examination may not have unresponsive testimony stricken unless it is incompetent. Barnett v. Chicago City Ry. Co., 167 Ill App 87, 91; United States v. Schneiderman, 106 F Supp 892, 905 (SD Cal 1952); State v. Cioffe, 128 NJL 342, 26 A2d 57, 63; Page Steel & Wire Co. v. Blair Engineering Co., 22 F2d 403, 406 (3d Cir 1927), cert den 276 US 623.

██ ██ Assuming, then, that it was error for the court in the instant case to have stricken the testimony in question, it was not reversible error because the same witnesses subsequently did testify as to the speed of the Goldsbury car. During cross-examination by Norton's attorney, plaintiff was asked whether she could translate into miles per hour her impression that the Goldsbury car was moving "fast"; and she replied that she could not. Goldsbury's attorney made objection neither to the form of this question nor to its answer. Certainly the jury could have inferred from this that plaintiff was of the opinion that Goldsbury's car was traveling "fast." On cross-examination of witness Ericson by Goldsbury's attorney, in response to leading questions she said that she could not judge the speed of defendant's car in miles per hour; that all she could observe was that Goldsbury's car was going at a greater speed than the car in which she was riding. Thus, the jury was informed as to the witnesses' opinions concerning the speed of Goldsbury's car immediately prior to the collision, and the error in striking their earlier testimony was rendered harmless. Devine v. Northwestern El. R. Co., 265 Ill 641, 643, 644, 107 NE 118; ILP Appeal and Error § 825. Moreover, the record is devoid of any evidence showing the speed limit on River Road. In such circumstances, the denominating

71

of a speed as "fast" could not, without more, be evidence of negligence, because what is "fast" in relation to a car moving at five miles per hour may still not be an improper speed for a particular road, especially one protected by stop signs.

██ ██ Finally, plaintiff asserts that records of the Division of Highways, State of Illinois, introduced in evidence by Goldsbury, and purportedly showing the sequence of lights at the large intersection of Rand and River Roads, were improperly admitted because they were not the best evidence of that fact. These records disclose that southbound traffic on River Road at the large intersection had a green light when northbound River Road traffic at the same intersection had a red light, a point which supports the uncontested testimony of Goldsbury (to the effect that he was proceeding south with a green light at the same time northbound cars were stopped in obedience to a red light). Plaintiff argues that an independent contractor, Meade Electric Company, handled the actual changing of the light sequence and that their records were the best evidence of the fact sought to be proved. However, plaintiff appears to go too far in her argument, because her investigator's affidavit, accompanying her post-trial motions, states that the light sequence at the time in issue could not have been determined from Meade as of the time of trial because Meade did not keep records of this type of work. Such being the case, then the best evidence rule cannot be invoked because its application is limited to those situations where the courts prefer the original of a document for the purpose of proving its contents. Jines v. Greyhound Corp., 46 Ill App2d 364, 378, 197 NE2d 58. Even if the rule were properly asserted, by analogy or otherwise, we are of the opinion that the questioned evidence could not have prejudiced the plaintiff's case since it was

merely cumulative, in the light of the uncontested testimony of Goldsbury to the same effect.

The judgment of the Superior Court is affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.