Mildred Daly, Administratrix of the Estate of Donna C. Daly, Deceased, Plaintiff-Appellant, v. James H. Bant and John Konecnik, Defendants-Appellees.

Gen. No. 69-194.

Second District.

April 29, 1970.

Thomas L. Ruth, Jr., of Barrington, for appellant.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This case presents the ever-troublesome issue of the circumstances under which the trial judge may properly determine that the evidence presents no factual question for the jury's consideration, and that the verdict should be directed.

At about 7 p. m., on July 29, 1967, Donna C. Daly, 15 years of age, was a passenger in a Ford automobile, presumably driven in a westerly direction on Three Oaks Road by William Cunningham. Their destination at the time was the New Place Teen Club on Route 31.

At the time and place in question, the defendant, James H. Bant, individually and as agent or employee of the defendant, John Konecnik, was driving a milk-truck tractor and trailer in a southerly direction on Route 31. Three Oaks Road intersects Route 31 near the crest of a hill, a short distance south of Route 14. All traffic on Three Oaks Road is required to stop before entering Route 31. The milk truck and the Ford car driven by Cunningham collided at the intersection of Three Oaks Road and Route 31. As the result of this collision, Donna C. Daly received bodily injuries which caused her death.

Mildred Daly, Administratrix of the Estate of Donna C. Daly, deceased, filed a wrongful death action against the defendants, James H. Bant and John Konecnik, wherein she alleged that Bant, individually and as agent of

Konecnik, was guilty of the following acts or omissions at the time and place in question:

(a) failed to keep a proper lookout;
(b) operated the motor vehicle at an excessive rate of speed in violation of section 49 of the Uniform Act Regulating Traffic on Highways (Ill Rev Stats 1967, c 95½, par 146) ;
(c) failed to keep his motor vehicle under control;
(d) followed traffic ahead of his vehicle too closely in violation of subsections (a) and (b) of section 61 of the Uniform Act Regulating Traffic on Highways (Ill Rev Stats 1967, c 95½, par 158(a) (b)).

These allegations were denied in the answer filed by the defendants, as were the other material allegations of the complaint.

Occurrence witnesses, Charles T. Stark, Jr., age 16, and Thomas Kleeman, age 15, testified on behalf of the plaintiff. Stark testified on direct examination that the car which he was driving entered Route 31 from Route 14; that he was driving in a southerly direction on Route 31 at a speed of 65 m. p. h., and was destined for the New Place Teen Club; that he noticed no traffic in front of him, but was aware of a truck which followed him closely for about one-half mile to the intersection of Route 31 and Three Oaks Road; that the truck was about three feet to the rear of his car as he went through the intersection; that he saw no traffic at the intersection; and that when he was a half block past the intersection, he saw a Ford car bounce off the side of the truck at the intersection.

On cross-examination, Stark stated that as he drove up the hill approaching the intersection, the truck stayed about three feet behind his car; that his car was travelling at a speed of 65 m. p. h.; that the truck slowed down as it approached the intersection; that he did not see any cars as he passed through the intersection; and that he

saw the accident occur through his rear view mirror when his car was about one-half block beyond the intersection.

Stark was then handed a statement which he had made on August 5, 1967, and he acknowledged that therein he had stated that the Cunningham car was travelling 65 m. p. h. when the accident happened; and that the truck was in the center of the intersection at the time.

Kleeman testified, on direct examination, that he was a passenger in the left rear seat of the Stark car at the time of the occurrence; that just before the collision, the traffic was clear on Route 31; that as the car in which he was riding approached the intersection, the truck was following behind it a distance of about one car length, and at the intersection, the truck was about two car lengths behind; that the speed of the car in which he was riding was from 60 to 65 m. p. h.; that he did not remember seeing any traffic on Three Oaks Road as he passed through the intersection; and that thereafter, he noticed that the truck in question was involved in a collision there.

On cross-examination, Kleeman testified that he did not see any cars approaching Route 31 on Three Oaks Road. He also stated that in a statement given on August 7, 1967, he estimated that the speed of the truck before the collision was about 50 m. p. h., and to the best of his knowledge, the car in which he was riding was travelling around 60 m. p. h.; and that at the time of the collision, the truck was five car lengths behind the car in which he was riding. It was his opinion that the Cunningham car slid into the truck. On redirect, he stated that just prior to the collision, the truck was following behind the car in which he was riding, a little less than a car length.

Two witnesses testified that the decedent was industrious, responsible and an excellent scholar. Photographs of the vehicles involved in the collision, and exhibits relative to the earnings of the decedent, were received in evi-

dence. No further evidence was offered on behalf of the plaintiff.

The defendants filed a motion for a directed verdict at the close of the plaintiff's case. This motion was granted, a verdict was directed in favor of the defendants and judgment was entered on the verdict. The plaintiff filed a motion for a new trial which was denied, and this appeal followed.

The plaintiff here contends that whether the defendant, Bant, kept a proper lookout was solely a jury question; that it was the province of the jury to resolve this question of fact, all conflicts in the evidence, the reasonable inferences to be drawn therefrom, and the credibility of the witnesses; that the truck driven by the defendant Bant was, pursuant to section 49 of the Uniform Act Regulating Traffic on Highways, restricted to a speed of 50 m. p. h. as it approached the intersection; that the defendant Bant was also under duty to decrease the speed of the truck when approaching the crest of the hill and when crossing the intersection; that the plaintiff had a right to elect whether to sue the driver of the Cunningham car and the defendants, or any one of them; and that the issue of whether separate acts of negligence occurred as the proximate cause of the plaintiff's injury was also for the determination of the jury.

There was no testimony which detailed how the collision occurred. The evidence indicated that the defendant Bant was driving the milk truck in a southerly direction on Route 31 at a speed of from 50 to 65 m. p. h.; that he was following the car driven by Stark at a distance of from three feet to one car length; and that, at the intersection, the truck was about two car lengths behind the Stark car. Neither Stark nor Kleeman testified that they saw any traffic on Three Oaks Road. When the Stark car was about one-half block beyond the intersection, Stark, through his rearview mirror, saw a car bounce off the truck when the truck was in the center of

238

the intersection. Kleeman was of the opinion that the car slid into the side of the truck. Stark gave a statement that the Cunningham car was travelling 65 m. p. h. immediately before the collision.

Photographs, which were admitted in evidence, showed extensive damage to the front of the Cunningham car and also revealed a stop sign at the intersection which required traffic on Three Oaks Road to stop before entering upon Route 31. The foregoing testimony, the exhibits, and the photographs, constitute the entire evidence in this case.

■ Trial courts direct verdicts in order to promote the efficient and expeditious administration of justice where no substantial factual dispute exists. Our constitution carefully preserves the rights of litigants to have a substantial factual dispute resolved by the jury, in that it is here that the evaluation of the credibility of witnesses may prove decisive. See: Illinois Constitution, Article II, section 5.

In Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967), at pages 504 and 505, the court said:

> "But the presence of *some* evidence of a fact which, when viewed alone may seem substantial, does not always, when viewed in the context of all of the evidence, retain such significance. As the light from a lighted candle in a dark room seems substantial but disappears when the lights are turned on, so may weak evidence fade when the proof is viewed as a whole. Constitutional guaranties are not impaired by direction of a verdict despite the presence of some slight evidence to the contrary (Chamberlain; Blume, 'Origin and Development of the Directed Verdict,' 48 Mich L Rev 555, 576–7), for the right to a jury trial includes the right to a jury verdict only if there are factual disputes of some substance."

239

And, at page 510, the court said:

"In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

The fragmentary evidence on the issue of the defendants' negligence did not establish that the defendant Bant failed to keep a proper lookout; operated the truck at an excessive rate of speed in violation of section 49 of the Uniform Act Regulating Traffic; failed to keep his motor vehicle under control, or followed traffic ahead of his vehicle too closely in violation of subsections (a) and (b) of section 61 of the Uniform Act. In addition, this evidence did not establish any relationship between the alleged negligence of the defendants and the proximate cause of the decedent's injury and death. There was no direct evidence relative to what took place prior to and at the time of the collision, and there was no proof that the Cunningham car came to a stop before entering the intersection.

The alleged statutory violation by the defendants, even if true, did not constitute negligence per se. Piper v. Lamb, 27 Ill App2d 99, 109, 169 NE2d 164 (1960). The mere failure to perform a statutory duty does not necessarily constitute negligence; a party may be negligent if the circumstances under which he, she, or it fails to observe the statute indicate a neglect of duty; but the mere failure, alone, to comply with the statute, may not be negligence. Brackett v. Builders Lumber Co. of Decatur, 253 Ill App 107, 112 (1929). The violation of a statute by acts of omission or commission, is only prima facie evidence of negligence. Burke v. Zwick, 299 Ill App 558, 563, 20 NE2d 912 (1939). In the case at bar, the violation of a statute must be considered with all the

other facts and circumstances in determining whether the defendants were negligent before and at the time of the occurrence in question.

■ The law requires affirmative and positive proof of actionable negligence as the proximate cause of the injury or damage suffered to warrant an assessment of damages. The causal relation between the alleged negligence and the injury must be established by a preponderance of the evidence and with reasonable certainty. Withey v. Illinois Power Co., 32 Ill App2d 163, 170, 177 NE2d 254 (1961). Such proof was not presented in the case at bar.

■ In her complaint, the plaintiff alleged that the decedent, at the time and place in question, was in the exercise of ordinary care for the safety of her person and the defendants denied this allegation. No evidence was offered on behalf of the plaintiff, either with reference to the conduct of the decedent, or the driver of the car in which she was riding, at and immediately prior to the collision; and no evidence was offered to establish that the decedent was a girl of careful habits. The failure of the decedent to exercise ordinary care constituted contributory negligence which would bar recovery.

In McInturff v. Chicago Title & Trust Co., 102 Ill App2d 39, 243 NE2d 657 (1968), at page 46, the court stated:

"It has long been the law that ordinary care in a particular case is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances; that a person has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the exercise of ordinary care; that a failure to see what is clearly visible is not such conduct as is compatible with due caution for one's own safety; . . .

"The burden rests on the plaintiff in a wrongful death action to prove that the decedent was in the

241

exercise of due care at the time he sustained the injury causing his death, and where there were no eyewitnesses to the accident, it is competent to prove that the deceased was a man of careful habits. Petro v. Hines, 299 Ill 236, 238, 239, 132 NE 462 (1921)."

In this case there is an absence of any direct or positive evidence that the defendants' negligence was the proximate cause of the decedent's injury; an absence of any substantial proof that the defendants were guilty of negligence; and the plaintiff has failed to prove that the decedent was in the exercise of ordinary care for her own safety at and immediately prior to the collision which caused her death.

Under these circumstances, we believe that it may fairly be said, that all of the evidence when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendants that no contrary verdict based on this evidence could ever stand.

■ Consequently, we find that the trial court properly directed a verdict for the defendants at the close of the plaintiff's case. Thus, the judgment of the trial court is affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.