RAE JEWELL PENZIN, Plaintiff-Appellee, *v.* THOMAS A. STRATTON, Defendant.—(MICHAEL B. MODUTHAGAM, Defendant-Appellant.)

(No. 57334;

First District (1st Division)—August 19, 1974.

*Modified opinion upon rehearing filed February 3, 1975.*

476

Ernest K. Koehler, of Chicago, for appellant.

Philip H. Corboy & Associates, of Chicago (Philip H. Corboy, Sidney Z. Karasik, and Paul B. Episcope, of counsel), for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

A jury returned a verdict in favor of the plaintiff, Rae Jewell Penzin, and against both defendants, Thomas Stratton and Michael Moduthagam, in the amount of $101,800, based on a complaint for personal injury. Only Moduthagam has appealed. His principal contention is that the evidence fails to establish any negligence on his part and, consequently, that the trial court should have directed a verdict in his favor.

At the point where they intersect in Chicago, Oliphant Street runs in a general northeast-southwest direction and the Northwest Highway in a general northwest-southeast direction.

Richard Oulund testified for the plaintiff that on the day of the accident he was driving northeast on Oliphant. He pulled up behind another car that had stopped for the red light. He had been stopped for a few seconds when he heard "screeching" brakes and saw the Moduthagam car "skidding" on Northwest Highway. He saw Stratton's car driving southwest on Oliphant coming into the intersection against the light. He estimated the length of the skidmarks to be about 20 to 25 feet and the speed of Moduthagam's car to be 25 to 30 miles per hour, but Moduthagam had slowed down by the time he collided with Stratton's car. He estimated Stratton's speed at 15 to 20 miles per hour going through the red light. Stratton's car was hit in the left front fender and door; it changed direction and proceeded over the curb on the southwest corner where the Fannie May Candy Store was located. Moduthagam's

car was stopped in the middle of the intersection after the impact. Stratton's car had gone through the window of the candy store and pinned the plaintiff against the wall. Oulund and others ran over and pulled Stratton's car away from the plaintiff and placed her on the sidewalk. Oulund had a conversation with Stratton, who said, "Wasn't the light green?" Oulund replied, "It was red all the time when you went through the intersection." Moduthagam's car made no attempt to swerve, and Oulund did not hear any car horn.

Richard Maher, a Chicago policeman and traffic investigator, testified that when he went to the scene Moduthagam's car was still in the intersection and Stratton's car was in the Fannie May Candy Store. He estimated the length of the skidmarks from Moduthagam's car to be 30 to 35 feet. They were light at the crosswalk and heavy for about 25 feet up to the point of impact. Stratton told him that he went through the red light on Oliphant. Moduthagam told him that he was northwest bound on the Northwest Highway when Stratton's car went through the red light; he saw it at the last minute, applied his brakes and struck it.

Harold Miller was in his car traveling northeast on Oliphant. His car was first in line stopped at the light at the Northwest Highway. He watched the plaintiff walking in front of him from the southwest corner to the northwest corner. She walked to the newsstand, and at the time the light was still red. He looked back to the newsstand and saw the plaintiff talking to a man there. He turned back to check the light and that is when the collision occurred. He heard no horn or screeching brakes, but he saw "a heck of an impact." Stratton's car was struck and continued toward the candy store. Stratton's car went up on the sidewalk, and the plaintiff and the man she was talking to started running away. Moduthagam's car had stopped in the intersection at the time of the collision. Miller estimated the length of the skidmarks behind Moduthagam's car to be "at least a car length, maybe more." He estimated the speed of Moduthagam's car just prior to impact to be "at least 20 miles an hour." He testified that Moduthagam's car "was going fast."

Moduthagam, called as an adverse witness, testified that he was proceeding northwest on Northwest Highway and that he was familiar with the intersection. The posted speed limit was 30 miles per hour. As he approached the traffic signal at the intersection, it was red. There were five cars in front of him waiting for the light. The light changed to green, and he followed the cars toward the intersection. There was approximately one car length between his car and the car immediately in front of him. There were no cars behind him. He estimated that he achieved a speed of about 20 miles per hour before the collision. As he entered the intersection he was looking straight ahead but with his peripheral vision

saw the cars at his left stopped at a red light. Suddenly he saw something coming from the right. At that time, his car had passed the pedestrian crosswalk, and the Stratton car on Oliphant was coming toward him. He applied the brakes as fast as he could and put all his weight on the pedal and pushed it as far as it would go to the floor. After the collision Stratton's car was diverted by the impact and proceeded to the candy store. Moduthagam was knocked under the dashboard by the force of the impact, and someone had to help him out of the car through the rear door. He said that the light was green before he entered the intersection and had not changed up to the time of the collision. He signed a statement in which he stated he was going "about 28 miles per hour." In a deposition he stated he was traveling 20 to 25 miles per hour.

Thomas Stratton testified as an adverse witness that he was traveling southwest on Oliphant. When he got within 75 feet of the intersection of the Northwest Highway, he looked up and saw a green light. Thereafter his attention was drawn away, and he did not check the light again. He was traveling at 25 miles per hour and did not slow down for the intersection because he believed he had a green light. He never told the police officer that he had a red light. After he entered the intersection he was hit so hard that he lost control of the car and crashed into a building. The fire department had to use a crowbar to get him out. He was looking straight ahead before the collision and never saw the other car. On cross-examination he testified that at the time he went into the intersection he did not know if the light was red or green.

The plaintiff testified that on the morning of the accident she was walking along the Northwest Highway. The traffic signal for pedestrian traffic along Northwest Highway had just turned green. She proceeded across Oliphant from the southwest corner to the northwest corner to purchase a newspaper. After she got up on the sidewalk and attempted to buy a newspaper she heard a screeching crash. She ran toward the candy store and was struck.

In the complaint Stratton was charged with operating his vehicle through a red stoplight signal; but Moduthagam was not. The evidence clearly establishes, and the plaintiff apparently concedes, that at the time of the accident Moduthagam was traveling with the green light and Stratton went through a red light. It is the plaintiff's position, however, that "[n]otwithstanding that a driver has a green light in his favor, he still has a duty to drive with the care of a prudent person to avoid a collision when danger is discovered, or by the exercise of reasonable care, should have been discovered." The charge against Moduthagam is that he operated his motor vehicle with speed greater than was reasonable,

he failed to keep a proper lookout, and he failed to decrease speed on approaching an intersection.

The plaintiff's argument concerning speed is based on the statute (Ill. Rev. Stat. 1967, ch. 95½, par. 146):

> § 49. General speed restrictions. (a) No person shall drive any vehicle upon any public highway of this State at a speed which (1) is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property; or (2) is greater than the applicable maximum speed limit established by this Section or by a regulation or ordinance made pursuant to the provisions of this Article. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions; and speed shall be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

In our view, the dispositive question is whether the evidence supports an inference that the defendant exceeded the speed limit of 30 miles per hour. The complaint never alleged that the speed limit was exceeded but the failure to so plead does not preclude proof of the fact of excessive speed if the violation was a proximate cause of the injury, and such proof will sustain an allegation of general negligence. (*Scally v. Flannery*, 292 Ill.App. 349, 11 N.E.2d 123.) At the outset, it must be noted that proof of speed in excess of the speed limit is prima facie evidence of negligence (*Daly v. Bant*, 122 Ill.App.2d 233, 258 N.E.2d 382) and it is for the jury to determine whether the excessive speed was a proximate cause of the plaintiff's injury. *Prignano v. Mastro*, 61 Ill.App. 2d 65, 72, 209 N.E.2d 12.

No witness testified directly that the defendant exceeded the speed limit. Although the plaintiff argues that the circumstantial evidence, in part, establishes excessive speed, neither party has submitted any authority on the question of the sufficiency of circumstantial evidence to prove excessive speed. There are many cases from other jurisdictions which hold that proof of speed beyond the legal limit may be proved by circumstantial evidence. (*Bozman v. State*, 177 Md. 151, 9 A.2d 60; *Youngs v. Fort*, 252 Iowa 939, 109 N.W.2d 230; *Swartz v. Dahlquist*, 320 Mich.

135, 30 N.W.2d 809; *McMinn v. Thompson*, 61 N.M. 387, 301 P.2d 326; *Brower v. Stolz* (N.D.), 121 N.W.2d 624; *Bock v. Sellers*, 66 S.D. 450, 285 N.W. 437; *Mitchell v. Wilkerson*, 193 Va. 121, 67 S.E.2d 912; *Vedder v. Bireley*, 92 Cal.App. 52, 267 P. 724.) Our research has disclosed no Illinois case precisely on the point, but we see no reason why the same rule should not be applicable in this State.

In *Little v. Gogotz*, 324 Ill.App. 516, 58 N.E.2d 336 (abstract opinion), the court in sustaining a verdict for the defendant held that neither the photograph showing slight damage to the defendant's car nor the fact that the collision caused "a loud report" outweighed the defendant's testimony that he was driving at a slow rate of speed. In *Welch v. Herman*, 337 Ill.App. 322, 86 N.E.2d 284, the court held that evidence of 15 or 16 feet skid marks, standing alone, was not sufficient. And in *Hester v. Goldsbury*, 64 Ill.App.2d 66, 212 N.E.2d 316, evidence that the defendant's vehicle was going "fast" was insufficient to prove excessive speed, particularly since there was no proof of the speed limit. All three cases, it should be noted, sustained verdicts for the defendants and rejected the plaintiff's contention that the circumstantial evidence showed excessive speed as a matter of law.

■■ In this case, however, unlike *Little* and *Welch*, eyewitnesses gave estimates of the speed of the defendant's car. Miller testified that the defendant was going "fast" and said his speed was at least 20 miles per hour at the time of impact, which took place, according to Officer Maher's estimate, 35 feet after the defendant applied his brakes. Oulund testified that the defendant's speed was between 25 and 30 miles per hour *after* he heard the defendant's brakes "screeching." Miller testified it was "a heck of an impact" and that Stratton's car "jumped in the air" over 2 or 3 feet. Another witness, William Dore, said that the defendant pushed Stratton's car so hard "it came real fast like a train." The defendant himself said that it was "quite an impact" and his front doors became jammed as a result of the accident. The impact knocked the defendant, who was wearing a seatbelt, although loosely, under the dashboard. Pictures showing the damage to both cars were shown to the jury by the plaintiff. The defendant has not made them part of the record on appeal. We can infer only that they show substantial damage to both vehicles. The jury could have found the skid marks to be 35 feet long, a fact which, though not conclusive, could be considered some evidence of excessive speed. (See *Bozman v. State*, 177 Md. 151, 9 A.2d 60; *McMinn v. Thompson*, 61 N.M. 387, 301 P.2d 326.) Moduthagam was a research physicist, but his attorney never sought to qualify him to give an opinion translating the skidmark length into miles per hour. In the face of that evidence, the jury was not required to accept the defendant's

testimony that he was traveling 20 miles per hour. In determining his credibility, the jury could consider, in addition to the circumstantial evidence, the fact that he had said in a deposition that he was traveling about 25 miles per hour and in a police statement that he was traveling about 28 miles per hour. In *Mitchell v. Wilkerson,* 193 Va. 121, 129, 67 S.E.2d 912, 916, the defendant testified that just before the accident he was traveling at a speed from 20 to 25 miles an hour, and the court said:

> "But there are these physical facts which warranted a finding that he was proceeding at a much greater speed than he admitted: The sound of 'tires crying' just before the crash; the fact that the [vehicle in which the plaintiff was riding] crossed the curb, went up a 3-foot embankment, uprooted and broke off a large tree, and overturned with a noise likened by one of the witnesses to 'a freight train starting out on a hill.' Such physical facts warrant the inference of excessive speed despite uncontradicted oral testimony to the contrary. [Citation.]"

(See also *Bock v. Sellers,* 66 S.D. 450, 285 N.W.2d 437; *Youngs v. Fort,* 252 Iowa 939, 109 N.W.2d 809.) We judge, therefore, that the jury was justified in concluding from the eyewitness testimony of the occurrence, together with the physical facts, that the defendant exceeded the speed limit.

Since we have judged that the evidence justifies an inference that the defendant exceeded the speed limit, we believe the case of *Prignano v. Mastro,* 61 Ill.App.2d 65, 72, 74, 209 N.E.2d 12, is controlling. In that case, two defendants collided in an intersection and one of them struck the plaintiff's vehicle. Both defendants testified that they entered the intersection on a green light. The plaintiff testified that one defendant went through the light at a speed of 45 miles per hour and that the other defendant, Mastro, was traveling at a speed of 35 to 40 miles per hour. The speed limit for both streets was 25 miles per hour. The court affirmed the judgment against Mastro, stating:

> "In this case there was a question presented for the jury to determine whether or not the Prignano car had entered the intersection on a green light which then changed to red; *whether or not the Mastro car had, on a green light, entered the intersection at the rate of 35 miles an hour;* and whether or not Mastro, assuming he had entered the intersection on a green light, had any duty to determine if he could go through the intersection without a resulting collision.
>
> *      *      *
>
> The jury could have found that Mastro was negligent in entering the intersection *as he did.*" (Emphasis added.)

Although the point is not clear, we surmise from the defendant's brief that he argues he cannot be liable because the injury was proximately caused by the negligence of Stratton and not by his negligence. The jury was justified in finding that the defendant's negligence was, at least, a contributing cause of the accident. *James v. Checker Taxi Co., Inc.*, 22 Ill.App.2d 22, 159 N.E.2d 12; Illinois Pattern Jury Instruction (Civil) 15.01.

We find no error in the court's ruling permitting the testimony of William Dore, who was an adult with a mental age of 12. The qualifying evidence does not show an abuse of discretion by the trial court in permitting Dore's testimony. See *Dallas v. Granite City Steel Co.*, 64 Ill.App.2d 409, 420, 211 N.E.2d 907.

Leon Dorn, a City of Chicago traffic engineer, testified as to the timing of the lights at the intersection. The defendant contends that his testimony was immaterial and was based on a record for which no proper foundation had been laid. First, other witnesses, including the plaintiff, testified to the length of time the light was green for her. Dorn testified from the records that the cycle length was 65 seconds and that the light was green for the Northwest Highway for 37 seconds. This testimony tended to corroborate the testimony of the plaintiff and her other witnesses, who testified to the length of time the light remained red for Oliphant traffic. Second, we judge that a proper foundation was laid for the admission of the document as a business record. Ill. Rev. Stat. 1971, ch. 110A, par. 236.

■■ We reject the defendant's argument that the court erred in denying him leave to file a third-party complaint against Stratton at the close of the evidence because, if for no other reason, the negligence of Moduthagam is clearly "active" and not "passive." *Moody v. Chicago Transit Authority*, 17 Ill.App.3d 113, 307 N.E.2d 789.

■■ The defendant's attorney asserts in his brief that at the trial he alleged in chambers that an agreement of some kind had been made between the plaintiff and Stratton and that they had denied the existence of any agreement. The record does not reflect that colloquy. He has repeated the allegation here and contends that his client was "prejudiced by the conspiracy and/or collusion between the plaintiff and the co-defendant Stratton's counsels [*sic*]." Since he, unfortunately, persists in his allegation, we will answer it. The records in the trial court and in this court are devoid of the slightest evidence to support so serious a charge.

■■ Last, the defendant contends that the verdict was excessive. The evidence established that the plaintiff suffered several pelvic fractures

which produced traumatic arthritis and which would interfere with natural child birth. She had lost motion in her left hip, and there was wasting or shrinking of the muscles of the right thigh. There is a permanent loss of muscle tissue in her calf. She will have to take medication indefinitely. The injury to her spinal column will be sensitive in the future. Doctors testified that the disability was permanent and that the arthritic condition which caused pain would probably get worse. There is a scar on her right hip and a large scar on her lower right leg. Her out-of-pocket damages were $7425. It has been said too often to require citation: The amount of damages to be awarded in a personal injury case is, generally, the prerogative of the jury. A finding as to damages will not be set aside unless it appears to have been the result of passion and prejudice. We cannot say that the damages in this case are the result of passion and prejudice, nor do we consider them as excessive under the facts. For these reasons the judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE, P. J., and HALLETT, J., concur.