MARILYN MATESEVAC, Plaintiff-Appellant, *v.* THE COUNTY OF WILL *et al.*, Defendants-Appellees.

Third District    No. 80-228

Opinion filed February 6, 1981.

Philip A. Troha, of Troha, Troha & Bednarek, of Joliet, for appellant.

Jay S. Judge, of Judge, Drew, Cipolla & Kurnik, Ltd., of Park Ridge, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The present action arose as a result of an automobile accident on March 5, 1976, in rural Will County. The plaintiff, Marilyn Matesevac, was a passenger in one of the autos involved in the accident, while the individual defendant, Will County Deputy Sheriff Raymond Gleason, was the driver of the other auto involved. At the time of the accident, Deputy Gleason was on duty for the sheriff's department of Will County. In the negligence action the jury returned a verdict in favor of the defendants. From the judgment entered upon that verdict, plaintiff Matesevac now appeals. She argues that the jury verdict was against the

manifest weight of the evidence; that the court erred in certain evidentiary rulings and in the instructions to the jury; and that certain conduct on the part of defense counsel constituted reversible error.

The record discloses that on March 5, 1976, plaintiff Marilyn Matesevac and one Dale Judevine had gone to look at a farmhouse in rural Will County which was for rent. Matesevac and Judevine, who were living together at the time of the accident, had gone to view the farmhouse with an interest in possibly renting it. Judevine was driving the auto, and Matesevac was the front seat passenger. They had viewed the farmhouse and were returning, driving south on Weber Road. Deputy Sheriff Gleason was driving east on Airport Road. Both roads are two-lane blacktop roads, Weber Road running north-south and Airport Road running east-west. Airport Road is the preferential highway, and at the intersection of the two roads there is a stop sign for vehicles on Weber. There is also a "Stop Ahead" warning sign on Weber Road prior to the intersection. The Judevine auto, with Matesevac as passenger, was approaching the intersection on Weber Road.

It was about 6:30 p.m. on March 5, 1976, as the autos approached the intersection. It was dusk and the road was dry. Deputy Gleason's auto approached the intersection at about 55 miles per hour, and Gleason testified that he had observed the headlights of an auto, the Judevine auto, proceeding southbound on Weber Road. When he first observed the approaching auto it was between one-half and one-quarter mile from the intersection. He next noticed the vehicle when it was approximtely 30 yards from the intersection. The Judevine auto did not stop at the stop sign on Weber Road but proceeded on into the intersection. Deputy Gleason's auto collided with it, doing considerable damage.

Marilyn Matesevac was seriously injured in the accident. Gleason told two officers investigating the accident that he did not realize that the other auto was not going to stop at the stop sign until too late to attempt to avoid the collision. The views between the two vehicles were unobstructed, there being only open fields without obstruction by crops or buildings. The posted speed on Airport Road was 55 mph. Other pertinent facts will be brought forth within the discussion of the issues raised on appeal.

The plaintiff's theory of recovery was that Deputy Gleason was negligent in failing to keep a proper lookout and in failing to reduce speed, even if Judevine was also negligent in failing to stop at the stop sign. The case was given to the jury, and it deliberated for approximately five hours without being able to reach a verdict. The jury informed the court that it could not arrive at a unanimous verdict and requested that a hung jury be declared. Instead, over counsel's objection, the court gave Illinois Pattern Instructions, Civil, No. 1.05 (2d ed. 1971), the deadlocked

jury instruction. Within two hours, the jury returned its verdict in favor of the defendants Gleason, County of Will and the sheriff's department. The jury made one specific finding, that plaintiff Matesevac was not guilty of any contributory negligence.

The first issue raised is whether the jury's verdict for the defendants was contrary to the manifest weight of the evidence. We find the jury's verdict to be amply supported in the record and, therefore, there is no basis for a reversal premised upon the manifest weight issue. (*Kofahl v. Delgado* (1978), 63 Ill. App. 3d 622, 380 N.E.2d 407; *Valasquez v. Yellow Cab Co.* (1975), 32 Ill. App. 3d 934, 337 N.E.2d 365.) The plaintiff, in urging that we overturn the jury verdict, emphasizes the facts that Deputy Gleason had an unobstructed view of traffic approaching on Weber Road and, also, the fact that he did not hit his brakes or take other evasive action prior to the collision. Gleason testified that he tried to brake but did not have enough time to react, largely because he had not anticipated that the Judevine auto would run the stop sign. The plaintiff argues that the evidence in the record establishes a clear failure by Gleason to exercise proper care as he approached the rural intersection. It is contended that the evidence indicates that Gleason was negligent as a matter of law. *Viewing all the evidence, we do not find Gleason's actions to be negligent as a matter of law.* The evidence in the record supports a conclusion that Dale Judevine's action in failing to stop at the stop sign on Weber Road was a proximate cause of the accident.

A similar situation was presented in *Kofahl v. Delgado* (1978), 63 Ill. App. 3d 622, 380 N.E.2d 407. There, the auto in which plaintiff was riding had entered upon a preferential highway after stopping at a stop sign. The defendant-driver, who had not seen the auto until it moved onto the highway, braked, but was unable to avoid colliding with the other auto. A jury verdict for the defendant was returned and the appellate court refused to reverse that decision. The court therein reviewed the applicable case law and statutory material pertinent to the issue.

> "The duty of a driver at a stop sign where his road intersects with a preferential highway has been codified in section 11—904(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 11—904(b)). That section provides that such a motorist must yield the right-of-way to any vehicle which is approaching so closely on the roadway as to constitute an immediate hazard to his vehicle's moving across or within the intersection. Whether a driver was negligent in entering a preferential highway protected by stop signs is always a question of fact since there are no precise standards and the issue involves considerations as to relative speeds and distances of the vehicles [citations].
> On the other hand, the party travelling on the preferential highway

does not have an absolute right of way. [Citations.] He must keep a proper lookout [citations], observe due care in approaching and crossing intersections and drive as a prudent person would to avoid a collision when danger is discovered [citations].

In this case, a view of the evidence as a whole supports the jury's finding that the sole proximate cause of this accident was the negligence of Edgar Kofahl, the driver of plaintiff's vehicle. The evidence implies that he either grossly misjudged the speed of defendant's automobile and its distance from the intersection or totally failed to see its approach. From the testimony of Frankie Greathouse, it might be inferred that Mr. Kofahl's view of the defendant's vehicle was obstructed by Greathouse's car as it turned right. Regardless of which of these situations was present, plaintiff's driver was negligent in edging slowly into the intersection. By doing so, he created a situation which did not afford the defendant an opportunity to avoid a collision after discovering the danger.

We cannot find any proof of negligence on the part of the defendant in the record. Although defendant Delgado did not notice the car in which plaintiff was riding until it entered the roadway, this cannot indicate that she was not keeping a proper lookout or exercising due care in approaching the intersection since the proper scope of her lookout was for cars entering the highway. [Citation.] As a traveller on a preferential highway, she had a right to expect a car approaching along St. Thomas Road to obey the stop sign and yield the right-of-way as required by law. [Citation.] As was stated in the case of *Hession v. Liberty Asphalt Products, Inc.*, 93 Ill. App. 2d 65, 235 N.E.2d 17:

> 'If the motorist on the through highway had to travel at such a speed that he could stop his car in time to avoid collisions with vehicles which ignore stop signs on intersecting roads, the purpose of having a through highway in the first place would be entirely thwarted.' 93 Ill. App. 2d 65, 74, 235 N.E.2d 17, 22.

The evidence establishes that defendant Delgado was keeping a proper lookout. She applied her brakes simultaneously with the entry of the Kofahl vehicle upon the highway. This was the earliest moment at which the danger could have been discovered since the vehicle had previously been stopped; however, at that point a collision was imminent and unavoidable." 63 Ill. App. 3d 622, 625-26.

As in the *Delgado* case, the evidence in the case at bar supports a conclusion that the negligence of Dale Judevine, in failing to keep a

proper lookout and in failing to stop at the stop sign, was a proximate cause of the accident and the injuries to the plaintiff, a passenger in the Judevine vehicle. Deputy Gleason was, apparently, keeping a lookout and was aware of the approach of the Judevine auto.

■■ The plaintiff also seeks to hold Gleason negligent as a matter of law because of his excessive speed, arguing that the evidence indicated that he was traveling in excess of the 55-mph limit on Airport Road. The record reveals that Gleason testified that he was going 55 mph, but that he admitted he may have been traveling slightly faster, somewhere between 55 and 60. While this evidence of speed in excess of the limit is *prima facie* evidence of negligence (*Penzin v. Stratton* (1974), 26 Ill. App. 3d 475, 479, 325 N.E.2d 732), it is a question for the jury whether the excessive speed was a proximate cause of the accident. (26 Ill. App. 3d 475, 479; *Hale v. Cravens* (1970), 129 Ill. App. 2d 466, 263 N.E.2d 593.) Here there were jury questions on the issue of the defendant's speed and on the issue of whether his speed, if excessive, was a proximate cause of the accident.

The next issue raised concerns the trial court's ruling on a motion *in limine* and the admission of evidence allegedly relevant to the issue raised in the motion. Prior to trial, the plaintiff filed a motion *in limine* seeking to bar any evidence that the plaintiff Marilyn Matesevac and Dale Judevine, the driver of the auto, were living together or that, at the time of the accident, they were returning from looking at a farmhouse they were considering renting. The court denied the motion, finding that the evidence was admissible in regard to the defense attempt to show a joint venture on the trip between Matesevac and Judevine. If the defense could have shown a joint venture between the two, then the negligence of Judevine, as driver, could have been imputed to the passenger Matesevac. (*Grubb v. Illinois Terminal Co.* (1937), 366 Ill. 330, 8 N.E.2d 934.) In the *Grubb* case, the Illinois Supreme Court found the presence of a joint venture or joint enterprise where three sisters had taken a journey for the purpose of purchasing material to decorate their homes. The evidence indicated that the sisters were sharing the costs of the gasoline and the expenses of the trip. Each was also paying a proportionate share for the house materials to be purchased. Because of the prior arrangement between the sisters to share expenses, the court found a joint enterprise which permitted the imputation of the driver's negligence to the passengers. (366 Ill. 330, 340.) Since *Grubb*, the courts have taken a more restrictive view of the joint enterprise doctrine as it relates to imputing negligence. They have not found a joint enterprise established in some situations where there is some joint purpose, and even some sharing of trip expenses, but where a business purpose has been lacking. *Smith v. Bishop* (1965), 32 Ill. 2d 380, 205 N.E.2d 461; *Andes v. Lauer* (1980), 80 Ill.

App. 3d 411, 399 N.E. 2d 990; *Ritter v. Taucher* (1978), 65 Ill. App. 3d 464, 382 N.E.2d 343; *Campanella v. Zajic* (1978), 62 Ill. App. 3d 886, 379 N.E.2d 866; *Babington v. Bogdanovic* (1972), 7 Ill. App. 3d 593, 288 N.E.2d 40.

■■ It was the defense position, in opposing the motion *in limine*, that the evidence would show that there was a joint enterprise between Judevine and Matesevac on the automobile trip to view the farmhouse they were interested in renting. The evidence, later admitted at trial, indicated that the two had been living together prior to the accident and that there was an informal sharing of expenses. It was also established that the two were contemplating moving into different rental housing and that the purpose of this trip was to view a farmhouse for rent. We find no error in the court's ruling on the motion *in limine* whereby the evidence was not excluded at the outset. The defense had a right to attempt to show the existence of a joint venture or enterprise, which certain evidence suggested to be potentially present in this case. The evidence of their living arrangement, wherein Judevine contributed toward expenses, and of the common purpose in going to view the farmhouse, was arguably relevant to a showing of a joint enterprise. Evidentiary matters, such as the determination of relevancy, are within the discretion given trial courts, and reviewing courts will not reverse unless a clear abuse of discretion is shown to have been committed. (*Ferdinand v. Yellow Cab Co.* (1976), 42 Ill. App. 3d 279, 355 N.E.2d 547.) There was no abuse of discretion by the trial court in denying plaintiff's motion *in limine*.

The court, however, later directed a verdict for plaintiff on the question of joint enterprise, finding the evidence insufficient to support giving the issue to the jury. There was no showing that the expenses of the trip were shared or that the rental of the farmhouse would be a shared expense. The evidence brought forth indicated that Judevine did not pay any set rent while living with Matesevac, but only that he gave her money on an as-needed basis. Under the facts, as developed at trial, the court properly withdrew the issue from the jury. No business purpose was shown to be present such as would permit a finding that a joint enterprise existed on the trip. There was no error in the court's direction of a verdict for plaintiff on the defense joint enterprise theory and removal of the issue from the jury's consideration.

■■ With regard to the evidence which had been produced in support of the joint enterprise theory, the plaintiff requested that the trial judge instruct the jury to disregard that evidence. By such instruction, the plaintiff sought to inform the jury that they should not consider the evidence of her living arrangement with Dale Judevine in reaching their verdict. The trial court, questioning the implications and effect of such evidence upon the jury and commenting that an instruction would only

serve to emphasize the evidence, denied the requested instruction. We find that the plaintiff was entitled to have the jury instructed to disregard that evidence and that it was error for the court to refuse the instruction. The risk of emphasizing the evidence though an instruction was one the plaintiff was apparently willing to accept, in light of the viewed prejudicial effect of the evidence. Certainly, having asked for such instruction, the plaintiff could not have assigned as error the court's giving of the instruction at plaintiff's request. The court's own rationale for not giving the instruction, that it would emphasize the evidence, indicates an awareness of the potentially unfavorable impact that the evidence could have on the jury's assessment of Marilyn Matesevac. The evidence had shown that Judevine, age 20, was living with Matesevac, age 33 and divorced, with three children. While there was no direct evidence of improper or illicit relations, the defense did bring forth that she cooked for him and did his laundry. The two shared the house and some household expenses, on an informal basis, and Judevine occasionally took Marilyn and her children traveling with him. While the court may have been correct, strictly speaking, in noting that the evidence might comport as well with a boarding arrangement as with other arrangements, it is difficult to believe that the jury viewed the relationship as one between a boarder and his keeper, on the evidence.

As to the prejudice attaching to evidence of the live-in arrangement, while such divorced-single person cohabitive arrangements have become more common in the past decade and one-half in this country, that does not necessarily indicate that juries, who represent the populace as a whole, view those arrangements without some prejudice. On the contrary, we conclude that the prejudicial effect of such evidence is apparent. (See, e.g., *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421.) That such arrangements are commonplace does not establish that they are acceptable or without pejorative implications to juries. The prejudicial effect of such evidence has been established and commented upon in the past. (*Ryan v. McEvoy* (1974), 20 Ill. App. 3d 562, 568, 315 N.E.2d 38.) We conclude that the jury should have been instructed to disregard the evidence of the living arrangements between plaintiff Matesevac and Judevine. As it was, the jury was instructed to consider all the evidence in reaching its verdict, and the evidence of the living arrangement was irrelevant to any issue in the case and potentially very prejudicial to the plaintiff. The potential for prejudice in the evidence called for an instruction as was requested by plaintiff. If the plaintiff was willing to take the risk of emphasizing the evidence with the instruction, then the court should have accommodated her.

■■ The prejudice inherent in the jury's consideration of that evidence was further emphasized by defense counsel's questioning of Dale Jude-

vine. Judevine was dismissed from the case shortly before trial and, as a result, defense counsel was prevented from calling him as a section 60 witness, where cross-examination and impeachment would have been proper. Neither did defense counsel make a sufficient showing of hostility or surprise, so as to support a finding that Judevine was a hostile witness. (See Ill. Rev. Stat. 1977, ch. 110A, par. 238.) Nevertheless, the defense called Judevine as their witness, since he was the only witness to their joint enterprise theory. Plaintiff Matesevac could not recall the events surrounding the fateful trip. Having called Judevine as its witness, the defense vouched for his credibility and could not attempt to impeach him. (*McCray v. Illinois Central R.R. Co.* (1957), 12 Ill. App. 2d 425, 139 N.E.2d 817.) Yet, on three separate occasions, defense counsel improperly sought to bring before the jury the bias and prejudice of Judevine.

■■ After opening questions to him concerning the living arrangement between him and Marilyn Matesevac, defense counsel stated, in front of the jury, that he believed Judevine was a hostile witness. No sufficient basis to support this characterization had been presented. Matesevac's counsel objected to the statement and the objection was sustained. Further questions concerning their private lives followed, along with an attempt to impeach Judevine by prior inconsistent statement. The impeachment attempt was improper, under the circumstances, and objection was again sustained. Finally, defense counsel suggested, by way of an impeachment question, that Judevine would like to see Matesevac successful in the action. Objection to that was again made and again sustained. The import of these improper attempts to impeach Judevine was that the jury's attention was drawn repeatedly to the "living arrangement" and how the relationship between Judevine and Matesevac might affect his testimony. Thus, this manner of examination by defense counsel reinforced any negative inferences the jury might have formed concerning the relationship. That objections were sustained does not necessarily indicate that the prejudice has been corrected. (*Morgan v. Rogers* (1975), 30 Ill. App. 3d 346, 332 N.E.2d 476.) Defense counsel, through these improper questions, was clearly intentionally emphasizing the living arrangement.

We conclude that the court's action in failing to give an instruction to the jury to disregard the evidence of Matesevac and Judevine's living arrangement, coupled with defense counsel's improper questions drawing attention to that relationship, resulted in sufficient prejudice to the plaintiff to require a new trial. As is evident from the deliberations of the jury, who at one point asked the court to declare it a hung jury, this was a case where liability was a sufficiently close question. As the Illinois Supreme Court noted in *Both v. Nelson* (1964), 31 Ill. 2d 511, 514, 202 N.E.2d 494:

"But where the case is a close one on the facts, and the jury might have decided either way, any substantial error which might have tipped the scales in favor of the successful party calls for reversal." We note that the case was a close one and that the action by the trial court in refusing the instruction to disregard and by defense counsel in seeking to impeach Judevine and focus the attention of the jury on the plaintiff's living arrangement constituted substantial error requiring a reversal.

The other evidentiary matters, and the giving of the deadlocked jury instruction, are issues which we need not address, in view of our reversal and remandment. Accordingly, we reverse the judgment of the Circuit Court of Will County and remand for a new trial in accordance with the views expressed in this opinion.

Reversed and remanded.

SCOTT, P. J., and STOUDER, J., concur.