DANIEL B. PACE *et al.*, Plaintiffs-Appellants, *v.* THOMAS A. McCLOW, Public Adm'r of the Estate of Scott A. Peterson, Deceased, Defendant-Appellee.

Second District   No. 82—982

Opinion filed November 3, 1983.

420

L. Lee Burks, Jr., of Park Forest, for appellants.

Gary K. Mickey, Donald L. Puckett, and Bernard K. Weiler, all of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, and John P. Callahan, of Geneva, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Daniel B. Pace, Leslie M. Pace, and Rachel Harris, appeal from a judgment, which was entered on a directed verdict at the close of plaintiffs' case, in favor of defendant, Thomas A. McClow, the public administrator of the estate of Scott A. Peterson, deceased.

Plaintiffs sought to recover damages from defendant for injuries they had sustained in an automobile accident. Plaintiffs alleged in their complaint that Peterson had negligently failed to keep a proper lookout while driving the automobile in which they were riding and that he had negligently operated this motor vehicle at a speed greater than was reasonable. They alleged that they were injured as a result of these negligent acts. The trial court, viewing the evidence most favorably to the plaintiffs, found that insufficient evidence had been presented by plaintiffs for a jury to find that Peterson had been negligent. The trial court, therefore, directed a verdict for defendant at the close of plaintiffs' case.

Plaintiffs' raise the following issues on appeal: (1) whether the trial court ruled correctly in directing a verdict for defendant at the close of plaintiffs' case, and (2) whether the trial court ruled correctly on a defense objection which resulted in the exclusion of certain photographic evidence offered by plaintiffs.

Only the evidence relevant to the issues raised on appeal will be set out.

Carl Olson, a former State Trooper, testified that while he was employed by the State police he investigated an automobile accident on northbound I-57 near Flossmoor Road at approximately 2:30 a.m. on January 17, 1977. When he arrived at the scene, he found a Datsun, the car in which plaintiffs were riding, sitting in the middle of the northbound lanes with extensive front end damage. No other vehicle was found. Olson found two pieces of iron at the scene. One was 30 feet in front of the car while the other was 50 feet in front. No skid marks were found. Olson testified that the pavement was dry, the sky was clear, and the road was straight and level. He testified that

there were 50 foot lights on either side of the highway.

Olson also testified that plaintiffs' exhibit No. 3, a photograph, was a fair and accurate portrayal of Flossmoor Road at I-57 at night. He testified that another photograph, plaintiffs' exhibit No. 4, was a fair and accurate representation of I-57 approaching I-80 as it was in 1977. These exhibits were denied admission into evidence on defendant's objection.

Trooper James Collier's testimony corroborated Olson's testimony concerning the weather conditions and physical setting. Trooper Collier testified that the pavement was dry and that it was a clear night. He stated that the roadway was straight and level and lighted by mercury vapor lights. When he arrived at the accident scene, there was no one there who witnessed the accident.

Richard Ferrington testified for plaintiff that he was a tow truck operator who had been called to the accident scene. He testified that there had been light snow on the night of the accident and that the pavement was slick that night.

Dr. James Lawrence Frost testified for plaintiffs that he was a forensic pathologist who examined Peterson's body and the car in which Peterson and plaintiffs had been riding. He rendered an opinion that Peterson was behind the wheel of the car at the time of collision because Peterson had injuries, which in Dr. Frost's opinion, had been caused by Peterson's body hitting the steering wheel. It was also his opinion that Peterson's right foot was firmly upon the gas pedal at the time of impact. This opinion was based upon his finding an imprint, which matched the configuration of the gas pedal cover, in the bottom of Peterson's right boot. This configuration was different from the configuration of the brake and clutch pedal covers.

James Stannard Baker, an accident reconstruction expert, gave an opinion based on the facts of this case that the car driven by Peterson crashed into the rear of a semitrailer. He based this opinion on the fact that the iron parts found on the roadway were "typical of the rear bumpers that are put on semi trailers ***," although he later admitted that that kind of bumper was also put on trucks other than semis, but "not very often." He gave his opinion that this semitrailer truck was moving at the time of impact, based on the location of the parts found on the roadway and the nature of the marks left by the semitrailer truck wheel on the car. His opinion was that the semitrailer truck was moving forward at the time, because the car bumper was pulled up rather than down. He rendered an opinion that the car was traveling 25-35 miles per hour faster than the semitrailer truck at impact and that the after collision speed of the car and the truck was

40-50 miles per hour.

On cross-examination he gave his opinion that the semitrailer truck's speed at collision was 40-50 miles per hour. This speed was calculated based on the relative weights of the vehicles. He estimated that the Datsun weighed about 2000 pounds and determined the 40-50 miles per hour speed of the semitrailer truck by using a possible range of weights for the truck of 30,000 to 80,000 pounds. This range was based on what the truck could have weighed empty to its possible loaded weight. He stated that he did not know the actual weight of the semitrailer truck and that this was the first time he had ever done such a calculation. He admitted that in his deposition he had said he could not determine the speed of the semitrailer truck at the time of collision but that he had developed the formula for making such a calculation during the two days before he testified.

Other evidence was presented, but it is not relevant to the issues raised on appeal. None of the plaintiffs, who were injured, could recall the accident, nor did anyone else testify that they witnessed the accident. At the close of plaintiffs' case the trial court directed a verdict for defendant.

Plaintiffs maintain that the trial court improperly directed a verdict for defendant at the close of plaintiffs' case. They contend that the evidence presented was sufficient to present a *prima facie* case of negligence. They maintain that the evidence was sufficient for the jury to conclude that Peterson was driving in excess of the speed allowed by statute and that he failed to keep a proper lookout.

A verdict should be directed "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Defendant is not entitled to a directed verdict at the close of plaintiffs' case unless the evidence, when viewed most favorably to the plaintiff, totally fails to establish one or more of the necessary elements of the plaintiffs' cause of action. (*Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, 1071, 436 N.E.2d 623; see also *Fincham v. Cooney* (1976), 42 Ill. App. 3d 719, 720, 356 N.E.2d 445.) Defendant contends that the plaintiffs failed to introduce evidence tending to prove that Peterson breached his duty of care to plaintiffs.

Negligence may be proved by either direct or circumstantial evidence. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 396; *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 86, 368 N.E.2d 1299.) Circumstantial evidence is the proof of certain facts and circumstances from

which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. (*Devine v. Delano* (1916), 272 Ill. 166, 179-80, 111 N.E. 742; *Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 408-09, 444 N.E.2d 220.) Defendant maintains that a fact cannot be established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that the proposed conclusion is the only one that can be drawn. (See *Lewis v. Mount Greenwood Bank* (1980), 91 Ill. App. 3d 481, 486, 414 N.E.2d 1079.) However, "the use of circumstantial evidence is not limited to those instances in which the circumstances support only one logical conclusion." (*Mort v. Walter* (1983), 98 Ill. 2d 391, 396.) Rather, "circumstantial evidence will suffice whenever an inference may reasonably be drawn therefrom [citations], and the facts established by such inferences are considered when an issue is decided as a matter of law or a verdict is directed." (98 Ill. 2d 391, 396-97; see also *Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 409, 444 N.E.2d 220.) Thus, the inquiry here is whether plaintiffs presented sufficient circumstantial evidence from which a jury could reasonably infer that Peterson was negligent.

■ Plaintiffs contend that the jury could infer from the evidence that Peterson was violating the speed statute. Section 11—601 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—601) provides, in part, that:

"(a) No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. ***

(b) No person may drive a vehicle upon any highway of this State at a speed which is greater than the applicable statutory maximum speed limit established by paragraphs (c), (d), (e), (f) or (g) of this Section, by Section 11—605 or by a regulation or ordinance made under this Chapter."

The speed limit at the point where this accident occurred was 55 miles per hour. Ill. Rev. Stat. 1981, ch. 95½, par. 11—601(d).

It has been held that proof of speed in excess of the speed limit is *prima facie* evidence of negligence. (*Matesevac v. County of Will* (1981), 93 Ill. App. 3d 280, 285, 416 N.E.2d 807; *Penzin v. Stratton* (1974), 26 Ill. App. 3d 475, 479, 325 N.E.2d 732.) Excessive speed may be proved by circumstantial evidence. (26 Ill. App. 3d 475, 479, 325 N.E.2d 732.) Thus, if the circumstantial evidence was sufficient to allow the jury to infer Peterson was driving in excess of the speed al-

lowed by statute (Ill. Rev. Stat. 1981, ch. 95½, par. 11—601), then the directed verdict was improper.

Plaintiffs' reconstruction expert testified that at impact in a rear-end collision the following vehicle slows down while the preceding vehicle is speeded up until they are traveling the same speed. At this point, the vehicles will then separate. He testified that the after-collision speed of both vehicles here was 40-50 miles per hour and that the car driven by Peterson was traveling 25-35 miles per hour faster than the semitrailer truck at impact. He stated that the truck was moving forward at the point of impact. On cross-examination he testified that he believed the truck was traveling between 40 and 50 miles per hour at the time of the collision.

●■ ■ While defendant argues, and the trial court found, that the testimony as to speed was based on speculation, we hold that the use of an estimated weight for the Datsun and a range of possible weights for the semitrailer truck, which according to Baker's unrebutted testimony was a common practice in engineering, was not improperly speculative. Thus, the calculations Baker performed with this data to determine the speed of the truck were proper and his opinion on the truck's speed could not be disregarded by the trial court in ruling on the directed verdict motion. While the trial court appeared to discount Baker's opinion that the bumper was from a semitrailer truck, an opinion upon which Baker made his weight estimates and, ultimately, his speed calculations, there was a sufficient foundation that the bumper came from a semitrailer truck so that this evidence could not be disregarded. Where there is physical evidence present sufficient to provide the basic data needed, an expert may analyze and reconstruct the occurrence. (*Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 516, 211 N.E.2d 733.) The jury still may accept or reject such testimony. 33 Ill. 2d 514, 516, 211 N.E.2d 733.

■ Viewing all of the evidence most favorably to plaintiffs, the evidence presents a question for the jury whether defendant was violating the speed laws. From the evidence, the jury could reasonably conclude that Peterson was driving at least 65 miles per hour (*i.e.*, 25 miles per hour faster than the truck's 40 miles per hour). Because the evidence could support a finding that defendant was violating section 11—601(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—601(b)), *prima facie* evidence of negligence was presented. *Matesevac v. County of Will* (1981), 93 Ill. App. 3d 280, 285, 416 N.E.2d 807.

Additionally, section 11—601(a) provides that a speed greater than that which is "reasonable and proper" is also a violation of law. While

the police officers testified that the road was dry, Ferrington, the tow-truck operator, testified that the pavement was slick. This evidence, along with the testimony concerning the speed differential between the two vehicles and their after-collision speed, was sufficient to put the question to the jury whether Peterson was driving at a reasonable and proper speed.

■■■ Plaintiffs also argue that the circumstantial evidence would allow the inference that Peterson was negligent in that he failed to keep a proper lookout. A motorist has a duty to keep a safe lookout to avoid colliding with a vehicle ahead and to take into account the prospect of having to stop suddenly. (*Droese v. Fleming* (1981), 93 Ill. App. 3d 781, 784, 417 N.E.2d 855; *Apato v. Be Mac Transport Co.* (1972), 7 Ill. App. 3d 1099, 1101, 288 N.E.2d 683.) Whether a driver has breached this duty is a question for the trier of fact. (See *Fincham v. Cooney* (1976), 42 Ill. App. 3d 719, 721-22, 356 N.E.2d 445.) In a rear-end collision it is for the trier of fact to determine whether the rear driver was negligent or not. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 566, 449 N.E.2d 211; *Kent v. Knox Motor Service, Inc.* (1981), 95 Ill. App. 3d 223, 227, 419 N.E.2d 1253; *Burgdorff v. International Business Machines Corp.* (1979), 74 Ill. App. 3d 158, 162-63, 392 N.E.2d 183.) Whether a driver failed to keep a proper lookout may be established by circumstantial evidence. See *Fincham v. Cooney* (1976), 42 Ill. App. 3d 719, 721-22, 356 N.E.2d 445.

■■ The evidence here was sufficient for a jury to conclude that Peterson breached his duty to keep a proper lookout. The evidence showed that there were no skid marks. Failure to leave skid marks, along with other evidence, may support a reasonable inference that the driver failed to keep a proper lookout. (See, *e.g., Fincham v. Cooney* (1976), 42 Ill. App. 3d 719, 721-22, 356 N.E.2d 445; *Smith v. Bliss* (1973), 12 Ill. App. 3d 514, 518, 299 N.E.2d 576.) In addition to the lack of skid marks, Dr. Frost's opinion was that Peterson's foot was firmly upon the accelerator at the point of impact. Baker's opinion was that the car Peterson was driving struck the rear of a semi-trailer. This evidence, when viewed most favorably to plaintiffs, allows the reasonable inference that Peterson drove into the rear of a semitrailer truck without attempting to use the brakes to avoid the collision. This evidence was sufficient for a jury to infer that Peterson failed to keep a proper lookout.

While defendant argues that other inferences may be drawn from this evidence, circumstantial evidence need not exclude all other inferences but must only be of such a character that the inference drawn is reasonable. (See *Mort v. Walter* (1983), 98 Ill. 2d 391, 396; see also

*Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 408-09, 444 N.E.2d 220.) The evidence, when viewed most favorably to plaintiffs, was sufficient to allow a reasonable inference that Peterson was not keeping a proper lookout.

■■ Based on the foregoing analysis, we hold that the directed verdict was improper.

■■ Because the issue of the photographic evidence raised by plaintiffs may come up on retrial of this case, we will briefly treat this issue here. The admission of photographs is within the discretion of the trial court and will not be reversed absent an abuse of discretion. (*City of Chicago v. Scandia Books, Inc.* (1981), 102 Ill. App. 3d 292, 299, 430 N.E.2d 14; *Lawson v. Belt Ry. Co.* (1975), 34 Ill. App. 3d 7, 21, 339 N.E.2d 381.) "In order for a photograph to be admitted into evidence, it is necessary that the photograph be identified by a witness as a portrayal of certain facts relevant to a particular issue and be verified by such witness on personal knowledge as a correct representation of these facts." (*City of Chicago v. Scandia Books, Inc.* (1981), 102 Ill. App. 3d 292, 299, 430 N.E.2d 14; see *Lawson v. Belt Ry. Co.* (1975), 34 Ill. App. 3d 7, 21, 339 N.E.2d 381.) The trial court excluded plaintiffs' exhibits Nos. 3 and 4 because it found that an inadequate foundation had been laid as to the lighting conditions depicted. Although Carl Olson testified that one of the photographs accurately showed the area of Flossmoor Road at I-57 at night, the record discloses that neither he nor anyone else specifically testified that the photographs accurately represented the lighting conditions present that night. Thus, we cannot say that the trial court abused its discretion in this matter. However, we do note that a sufficient foundation was laid for these photographs as to their depiction of the configuration of the highway and other physical aspects of the scene. Thus, these photographs may be admissible for the limited purpose of depicting the physical aspects of the scene, with the jury being instructed not to consider the lighting conditions depicted. See, *e.g.,* *Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 105, 378 N.E.2d 502; *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 1017, 388 N.E.2d 770; *Green v. Keenan* (1956), 10 Ill. App. 2d 53, 60-61, 134 N.E.2d 115.

For the foregoing reasons we reverse the judgment of the trial court entered on defendant's motion for a directed verdict and remand for a new trial.

Reversed and remanded.

LINDBERG and HOPF, JJ., concur.