DONALD DELNICK, Plaintiff-Appellant, v. OUTBOARD MARINE COR-
PORATION, Defendant-Appellee (Jean Delnick, Plaintiff).

Second District   No. 2—89—0716

Opinion filed May.18, 1990.

Gregory A. Stayart, of Romanyak & Miller, of Chicago (James A. Romanyak, of counsel), for appellant.

Donald J. O'Meara, T. Patrick Rice, D. Kendall Griffith, and Dawn L. Haghighi, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and Robert E. Pederson, of Outboard Marine Corporation, of Waukegan (Joshua G. Vincent, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:
Plaintiff, Donald Delnick, filed a four-count complaint in the circuit court of Du Page County seeking damages against defendant, Outboard Marine Company, for injuries arising out of his use of a Lawn-Boy self-propelled lawn mower manufactured by defendant. Count I presented a claim for negligent design and manufacture based on *res ipsa loquitur*. Count II alleged negligence in the design and manufacture of the mower and the failure to provide adequate warnings concerning use of the mower. Count III, based on strict liability, alleged defective design and manufacture and failure to warn. Count IV, brought by plaintiff's wife, sought damages for loss of consortium.

Defendant successfully moved for summary judgment on count I, and count IV was voluntarily dismissed. Following a jury trial, verdicts against plaintiff were returned on counts II and III.

The following issues are raised by plaintiff on appeal: (1) whether the trial court erred in failing to instruct the jury on the issue of *res ipsa loquitur*; (2) whether the jury's finding that the statute of repose applied to plaintiff's strict liability claim was against the manifest weight of the evidence; (3) whether section 13—213(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—213(b)) is unconstitutional; (4) whether the trial court erred in instructing the jury on assumption of risk; (5) whether the trial court abused its discretion in excluding certain evidence; (6) whether the trial court erred in permitting defendant to impeach plaintiff; (7) whether defendant's counsel's closing argument was improper and prejudicial; (8) whether the trial court erred in failing to submit a general verdict form to the jury; and (9) whether the trial court erred in denying plaintiff's motion for judgment notwithstanding the verdict.

Plaintiff was the only witness to the occurrence giving rise to his injuries. According to plaintiff, he purchased his Lawn-Boy lawn mower, to the best of his recollection, in the summer of 1976. On cross-examination, plaintiff's deposition was introduced wherein he stated that he purchased the mower in either 1973 or 1974.

Plaintiff also admitted to having read the entire owner's manual. The manual, which was introduced into evidence, contained warnings to never leave the operator's position while the engine is running and to not walk in front of a self-propelled mower. It further stated that all nuts and bolts should be periodically checked and tightened before using the mower. The manual contained no specific warnings regarding potential malfunctions of the self-propelled mechanism of the mower.

Prior to the date of the accident, plaintiff took the mower in once to have the pull cord replaced and once for a checkup. About one month prior to the accident, he took the mower to a local hardware store for service. He testified that to his knowledge the mower had never been altered.

Plaintiff described how the self-propelled drive mechanism is engaged. According to plaintiff, a knob must be pulled sideways and a rod is pulled backward to engage the drive mechanism. To disengage the drive, the process is reversed.

On the left side of the handle of the mower is a device called a "clamp screw." Plaintiff, on a few occasions, had to tighten the clamp screw when it loosened or became dislodged. According to

plaintiff, when the clamp screw was loose or dislodged the self-propelled mechanism did not work. Plaintiff admitted that it was important to keep the clamp screw tight but that he did not check it the day of the accident.

On May 28, 1986, sometime after 6:30 p.m., plaintiff began cutting his grass with his lawn mower. While cutting the southern perimeter of his rear lawn in an easterly direction, plaintiff observed some irises leaning over into the projected path of his mower. At that point, plaintiff disengaged the self-propelled mechanism by pulling the handle forward until the "little white knob" clicked into place. Plaintiff then went to where the irises were, bent down on his left knee, put his left foot behind him, and began to move the irises away from the path of the mower. The lawn mower was not moving, but the engine was running when plaintiff left the operator's position. According to plaintiff, the yard is level and flat at the point where he left the mower.

Plaintiff estimated the distance between where he knelt down and the front of the mower to be four or five feet. As plaintiff moved the irises, he felt a hot, wet sensation in his left foot. He went from a kneeling position to a sitting position, saw the lawn mower, and kicked it with his right foot. Plaintiff then observed that his left foot had been lacerated by the mower. Plaintiff did not see the lawn mower move after he disengaged the drive mechanism. Medical testimony establishes that plaintiff lost four of his toes on his left foot as a direct result of the accident.

On cross-examination, plaintiff was asked if he was approximately three feet from the birdbath at the point he stopped the mower, to which he replied that he did not recall ever saying how far he was from the birdbath. Defense counsel then read from defendant's deposition wherein he was asked "Within how many feet of the birdbath?" to which plaintiff answered "three." Plaintiff responded that if it is in the deposition, it must be his answer.

Plaintiff also answered "yes" when asked if he was three or four feet from the mower when he knelt down. Plaintiff also admitted that he did not know if the side or the front of the mower came into contact with his left foot.

Plaintiff further admitted on cross-examination that he raised and lowered the height of the wheels some years before without adjusting the clutch control rods as required by the manual.

Mr. Joseph K. Adelman, a mechanical engineer and consultant, testified for plaintiff. He inspected plaintiff's mower on two occasions, reviewed the owner's manual, and obtained the American Na-

tional Standards Institute (ANSI) specifications applicable to plaintiff's mower.

According to Adelman, during his first inspection, the mower's drive mechanism would engage on its own if the clamp screw was not tight. Adelman opined that the mower was unreasonably dangerous due to the design of the clutch rod mechanism which relies on the owner to keep the clamp screw tightened. He also criticized the owner's manual as not bringing "out up front the need, the importance, the significance of tightening that clamp screw."

Adelman inspected the mower a second time because he discovered from defendant's expert's deposition that the mower should have a torque lug spring which it did not have during his first inspection. Adelman then requested and received a spring for a 1972 model Lawn-Boy from plaintiff's attorney and installed it on plaintiff's mower. Plaintiff's mower, although made in 1972, is considered a 1973 model. Adelman tested the clutch rod mechanism 10,000 times, and the spring held up. Adelman further opined that the spring could break during 10 years of normal usage and that the spring he received was shorter than the one described in Lawn-Boy's mechanical drawings which would cause it to come out of its notch on the mower during its usage.

Adelman described the spring's function as insuring that the drive mechanism will return to neutral even if the clamp screw is loose. The owner's manual is silent as to the spring, nor does the mower contain any warnings regarding the spring. Adelman opined that there should have been a warning as to the need to have the spring in place and its significance to the operation of the drive mechanism.

On cross-examination, he admitted that the drive mechanism will not engage even without the spring if the lock-out clip and clutch rod are in the proper neutral position and the clamp screw is tight. Likewise, even if the mower is not properly disengaged or the clamp screw is loose but the spring is properly in place, the drive mechanism will not engage. Adelman could not say with a reasonable degree of engineering certainty that the spring design caused the accident.

Mr. James Efflandt, employed by defendant as a project engineer, testified that he inspected plaintiff's mower and discovered that the torque lug spring was missing. He further testified that plaintiff's mower was manufactured on October 11, 1972.

Efflandt disagreed with Adelman's opinion that the torque lug spring later installed on plaintiff's mower by Adelman was loose to

the point it could fall out. Efflandt checked the spring in court and stated it was tight. Efflandt further stated, in disagreement with Adelman's opinion, that the spring as designed is not subject to breakage. According to Efflandt, he tested the mower without a spring installed and discovered that, when the lockout mechanism was not in neutral, the mower would not self-propel but that the motor would sort of shudder. Additionally, defendant has no record of failure of the spring during any of its quality control testing procedures.

Efflandt also stated that the mower complies with the relevant 1972 ANSI safety standards and that the United States Testing Lab certified that it is in compliance with those standards. Finally, Efflandt opined that on the prior occasion when plaintiff had moved the clutch rod to the engaged position and the mower did not self-propel due to a loose clamp screw or misadjusted clutch rod, the spring was in place. On cross-examination, Efflandt conceded that there were alternative drive mechanisms available in 1972.

Mr. David Sassaman, a mechanical engineer, testified that the subject mower complied with the 1972 ANSI standards. According to Sassaman, with the spring in place and the clamp screw loose, the mower will not self-propel in the disengaged mode. It did self-propel, however, when the spring was removed. Sassaman opined that the mower was designed in a safe manner, meets or exceeds all existing safety standards, and is safe for its intended purpose.

On cross-examination, Sassaman stated that he found no evidence that the mower had been abused or misused. He further conceded that other drive mechanisms were available when plaintiff's mower was manufactured.

Defendant submitted a production card maintained by it which indicates that defendant's mower was manufactured on October 11, 1972. Steven Wood, who was employed at the plant where the mower was manufactured as a service training instructor in 1972, testified that part of his responsibilities at that time included inventory management. According to Wood, he was very familiar with the manufacture and sale of lawn mowers produced at the plant in 1972.

Wood stated that mowers were transferred to a warehouse in Galesburg, Illinois, after manufacture. The distributor would place orders, and the mowers would be shipped FOB within 30 days of receiving the order. According to Wood, title to the goods passed to the distributor once they were loaded on the truck and the driver signed the bill of lading. Wood testified that the absolute longest period of time a mower would remain in the warehouse before being

shipped to a distributor was 12 months after its date of manufacture.

Plaintiff initially contends generally that it was error for the trial court to find that *res ipsa loquitur* did not apply in this case. More specifically, plaintiff argues that it was error for the trial court not to have given the standard *res ipsa loquitur* instruction as tendered by plaintiff.

■ It is essential to note that plaintiff does not raise a specific challenge to the pretrial granting of summary judgment in favor of defendant on the *res ipsa loquitur* issue in its brief. In the trial court, defendant moved for summary judgment on the *res ipsa* issue presented in count I of plaintiff's complaint. In doing so, it attached the depositions of plaintiff and his expert witness, Joseph K. Adelman. Plaintiff filed a response to defendant's motion. The trial court subsequently ruled in favor of defendant which effectively eliminated the *res ipsa* issue from the case. This procedure was proper as the application of the doctrine in a given case is a question of law which must be decided in the first instance by the trial court (*Imig v. Beck* (1986), 115 Ill. 2d 18, 27, 503 N.E.2d 324), and it is the proper function of the trial court, at the pretrial motion stage, to determine the appropriateness of *res ipsa loquitur* to the facts of the case presented. (*Greenberg v. Michael Reese Hospital* (1979), 78 Ill. App. 3d 17, 25, 396 N.E.2d 1088, *aff'd in part & rev'd in part on other grounds* (1980), 83 Ill. 2d 282, 415 N.E.2d 390.) Because reliance on the doctrine must be pleaded (*Walker v. Rumer* (1978), 72 Ill. 2d 495, 502, 381 N.E.2d 689), and there was no allegation of *res ipsa* remaining in the case, no such issue remained before the jury. Therefore, it would have been improper to have instructed the jury thereon. Consequently, plaintiff's contentions in that regard must fail.

Plaintiff has not addressed the propriety of the summary judgment order as to the *res ipsa* count in its appellate brief. As plaintiff has not presented any argument or authority to support the reversal of the trial court's summary judgment order on the *res ipsa* count, the issue is waived.

Plaintiff next contends that the jury's answers to two special interrogatories that plaintiff's mower left the possession of defendant on or before May 27, 1974, and was purchased by plaintiff on or before May 27, 1976, are against the manifest weight of the evidence.

It should be noted that plaintiff, in his brief, refers to the date of on or before May 27, 1974, as the date contained in the special interrogatory regarding when plaintiff purchased the mower. The record indicates that the date on that interrogatory is May 27, 1976, and defendant refers to it as such in its brief. Plaintiff offers no reason

in its principal brief or in its reply why it uses the date of May 27, 1974, and thus it must be assumed that the use of that date is an oversight by plaintiff.

Section 13—213(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—213(b)) states:

"(b) Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or promised the product for a longer period and the action is brought within that period."

The two special interrogatories submitted to the jury asked:

"Was the Lawn Boy lawn mower, model 8231, serial number 6462552 sold and did it leave the possession of Outboard Marine Corporation on or before May 27, 1974?"

"Did Donald Delnick obtain and possess the Outboard Marine Corporation/Lawn Boy lawn mower, model 8231, serial number 6462552, on or before May 27, 1976?"

The jury answered "yes" to both special interrogatories. An affirmative answer to either interrogatory would preclude plaintiff's strict liability count under the above-cited statute of repose. As the jury responded affirmatively to both interrogatories, the only issue is whether both responses were against the manifest weight of the evidence. As the statute of repose is an affirmative defense, the burden rests upon defendant to prove it. *Burnett v. West Madison State Bank* (1940), 375 Ill. 402, 408, 31 N.E.2d 776; *Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 613, 483 N.E.2d 613.

As to the interrogatory concerning whether the mower left defendant's possession prior to May 27, 1974, defendant submitted a production card maintained by it, which shows that the mower was manufactured on October 11, 1972. Steven Wood, who was employed at the plant where the mower was manufactured as a service training instructor in 1972, testified that part of his responsibilities at that time included inventory management. According to Wood, he was very familiar with the manufacture and sale of lawn mowers produced at the plant in 1972.

Wood stated that mowers were transferred to a warehouse in Galesburg after manufacture. The distributor would place orders, and the mowers would be shipped FOB within 30 days of receiving the order. According to Wood, title to the goods passed to the distributor once they were loaded on the truck and the driver signed the bill of lading. Wood testified that the absolute longest period of time a mower would remain in the warehouse before being shipped to a distributor was 12 months after its date of manufacture. Plaintiff points to no evidence to rebut Wood's testimony, but, rather, emphasizes Wood's failure to testify as to the exact date the mower was shipped and defendant's failure to introduce any documentary evidence to show when the mower was shipped.

■■ ■ Circumstantial evidence is sufficient to establish a fact in a civil case, and such evidence will suffice whenever an inference may reasonably be drawn therefrom. (*Pace v. McClow* (1983), 119 Ill. App. 3d 419, 423-24, 458 N.E.2d 4.) The question here is whether defendant submitted sufficient circumstantial evidence from which the jury could reasonably infer that the mower left defendant's possession on or before May 24, 1974. Based on the manufacture date of October 11, 1972, and Wood's testimony that the longest a mower would be warehoused before being shipped was one year, the jury could have reasonably inferred that plaintiff's mower left the possession of defendant on or before October 11, 1973, well before the May 27, 1974, date. Thus, the jury's affirmative response to the special interrogatory regarding whether the mower left defendant's possession on or before May 27, 1974, is not against the manifest weight of the evidence. That finding alone is enough to bar plaintiff's claim under the statute of repose regardless of the jury's answer to the second interrogatory. Nevertheless, we shall briefly address the sufficiency of the evidence as to that interrogatory.

The second interrogatory asked whether plaintiff obtained and possessed the mower on or before May 27, 1976. Although there is no evidence as to how long plaintiff's mower remained in possession of a distributor or retailer prior to being sold to plaintiff, defendant's evidence does support a reasonable inference that the distributor took possession no later than October 11, 1973, well over two years before May 27, 1976. Plaintiff testified on direct examination that he purchased the mower "the summer of 1976." He offered no other evidence as to the purchase date of the mower.

Plaintiff, on cross-examination, was asked whether it was possible that he purchased the mower in 1974 to which plaintiff answered, "I have no accurate records that indicate when the lawnmower [*sic*]

was purchased." The question was repeated, and plaintiff stated that he had purchased his previous mower in 1965 and he was sure it lasted in excess of 10 years. Defense counsel then referred to plaintiff's deposition wherein plaintiff stated that he could have purchased the mower in 1973 or 1974. Plaintiff admitted answering in the manner contained in his deposition. We note that plaintiff's statement that he could have purchased the mower in 1973 or 1974 constitutes an admission and is therefore admissible as substantive evidence. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.1, at 525-26 (4th ed. 1984).

■■ ■ The credibility of the witnesses and the weight to be given their testimony are typically matters for a jury to consider, and unless its determination is manifestly against the weight of the evidence it will not be disturbed on appeal. (*Moran v. Lala* (1989), 179 Ill. App. 3d 771, 782, 534 N.E.2d 1319.) Clearly, the jury here was free to reject plaintiff's trial testimony as to when he purchased the mower and was equally free to believe plaintiff's testimony contained in his deposition. Furthermore, plaintiff's testimony that he purchased the mower in the "summer" of 1976 lacks definiteness and does not necessarily establish that the mower was purchased after May 27, 1976. There was sufficient evidence to support the reasonable inference that plaintiff purchased the mower prior to May 27, 1976. Accordingly, the jury's affirmative response to the interrogatory concerning whether the mower was purchased on or before May 27, 1976, was not against the manifest weight of the evidence. As the two interrogatories indicate that plaintiff's claim was barred by the statute of repose, the jury properly found for defendant on the strict liability claim.

Plaintiff also contends that section 13—213(b) is unconstitutional because it prohibits an injured party from bringing a products liability claim if the injury arises after 12 years from the first sale of the product or if it arises after 10 years from the sale of the product to the injured party. Plaintiff concedes that this court has upheld the constitutionality of section 13—213(b) but argues that the issue remains viable because our supreme court has never addressed the issue. Plaintiff further maintains that this court should reconsider the constitutionality of section 13—213(b) in light of several out-of-State decisions holding those States' statutes of repose unconstitutional.

■■ This court, in *Thornton v. Mono Manufacturing Co.* (1981), 99 Ill. App. 3d 722, 425 N.E.2d 522, addressed the same constitutional challenge raised by plaintiff in this case and upheld the constitutionality of section 13—213(b). (99 Ill. App. 3d at 724-28, 425

N.E.2d at 524-26.) Research indicates no other appellate or supreme court opinions in Illinois directly addressing this issue. As our decision in *Thornton* has disposed of this issue on the same grounds raised by plaintiff here, we will follow *Thornton* and hold section 13—213(b) to be constitutional. As the foreign jurisdiction cases cited by plaintiff address varying statutes only similar to section 13—213(b) and constitutional provisions different from Illinois' Constitution, we decline to follow them.

Plaintiff next argues that it was error to instruct the jury on assumption of risk relating to the strict liability count because the evidence at trial failed to show that he knew or should have known of the danger of stepping in front of the mower while the self-propelled mechanism was disengaged. Defendant makes several responses, one of which we find to be dispositive.

■ Defendant contends that the jury had no reason to consider the assumption of risk instruction because it found for defendant on the question of liability. The jury was instructed that should it find defendant liable on the strict liability claim and if it were to find plaintiff assumed the risk then it must determine damages. The jury was further instructed first to determine defendant's damages if plaintiff had not assumed the risk and then reduce that amount by the percentage of damage attributable to plaintiff's assumption of the risk. Consequently, as instructed, the jury need not consider plaintiff's assumption of risk unless it first determined defendant to be liable on the strict liability claim. As the jury found for defendant on that claim based upon the answers to the two special interrogatories, any arguable error in instructing on assumption of risk was nonprejudicial in this case.

■ Plaintiff next contends that it was an abuse of discretion to grant defendant's motion *in limine* precluding him from introducing evidence of post-occurrence changes in the traction and control mechanisms implemented by defendant in its self-propelled mowers. Any argument urging admission of this evidence in support of the strict liability claim need not be addressed as plaintiff suffered no prejudice due to the jury's findings in the special interrogatories regarding the applicability of the statute of repose to that claim.

Plaintiff further contends that the trial court abused its discretion in excluding defendant's mechanic's handbook from evidence, particularly that portion referring to the need to keep the clamp screw securely tightened to ensure that the self-propelled mechanism operates properly. Similarly, we would again emphasize that plaintiff suffered no prejudice in the exclusion of the handbook it offered to

support the strict liability claim due to the jury's finding on the applicability of the statute of repose to that claim.

Plaintiff next contends that improper impeachment occurred in this case, first because defendant's counsel used an excerpt from his deposition which did not show any direct or indirect inconsistency in his trial testimony. Second, defendant's counsel demonstrated a lack of good faith in his impeachment of plaintiff because he knew that the deposition testimony was ambiguous and not inconsistent with plaintiff's trial testimony.

At trial, plaintiff was asked on cross-examination, "[a]nd when you stopped the mower, you were approximately three feet from the bird bath, correct?" Plaintiff responded, "[n]o, I didn't say that. I don't recall ever having said how far I was from the bird bath." Defendant's counsel then read a portion of plaintiff's deposition:

"Q. Page 69. And at that time you were asked and you gave answers to the following questions:

'Q. Within how many feet of the birdbath?' And you answered 'three.'

* * *

Isn't that correct, I asked that and you answered in that manner?

A. If it is in the deposition, yes, it must be."

■ We note initially that plaintiff's counsel never objected to the allegedly improper impeachment at trial and therefore waived any error for purposes of appeal. (*Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 204, 388 N.E.2d 1298.) Moreover, even were we to address plaintiff's contention that improper impeachment occurred, we would find it nonmeritorious. While the portion of plaintiff's deposition used to impeach him is not particularly clear standing alone, it is clear that the deposition question refers to plaintiff's distance from the birdbath when considered in the context of defendant's counsel's trial examination. Thus, the use of plaintiff's deposition to show the inconsistency in his trial and pretrial testimony was completely proper and in good faith. Moreover, it was not error for defense counsel to utilize that inconsistency in his closing argument.

Plaintiff raises two contentions that defense counsel's closing argument was improper and prejudicial. First, he argues that it was error for defense counsel to have demonstrated to the jury his view of the accident based on evidence not of record. Specifically, plaintiff maintains that defense counsel's "reconstruction," which consisted of counsel's attempt to reenact the occurrence, was improper because it was based solely upon the supposed impeachment of plaintiff regard-

ing his distance from the birdbath. Second, plaintiff asserts that defense counsel implied that plaintiff's attorneys and expert were dishonest because he characterized plaintiff as the only honest person connected to the prosecution of the lawsuit.

■■■ Research indicates one Illinois case addressing the propriety of counsel's own demonstration during closing argument. In *Robinson v. Kathryn* (1959), 23 Ill. App. 2d 5, 161 N.E.2d 477, the court held that it is proper for an attorney to demonstrate an occurrence if such demonstration is sustained by evidence in the record. (*Robinson*, 23 Ill. App. 2d at 8, 161 N.E.2d at 479.) Here, there was evidence in the record, based on defendant's impeachment of plaintiff, that plaintiff was three feet from the birdbath at the time of the accident. Such evidence was further admissible as an admission of a party and could, therefore, be used to support defense counsel's demonstration of the occurrence. Accordingly, defense counsel's demonstration of the accident, based in part on the admission by plaintiff that he was three feet from the birdbath, was proper.

As to defense counsel's reference to plaintiff as the one honest person connected with the prosecution of the lawsuit, counsel stated in his closing argument, in pertinent part:

"[Defense Counsel]: Mr. Delnick, who is very honest gentleman, told you he never saw it move, and the reason he never saw it move was because it never moved. Think about it. Everyone is insinuating. The one witness, the one honest man, the plaintiff, he never saw it move.

\* \* \*

The funny part about this situation is we didn't need anything at all except the plaintiff on the stand for the whole trial, and all you have to do is think about that and that one picture, and that's all there was for this whole week, that one thing.

The honest man went up there, and the honest man told his story, and the honest man's facts show no lawsuit against my client. Plaintiff has not proved the things he claims."

■■■ It should be noted initially that plaintiff never objected to these comments at trial although he did raise the issue in his posttrial motion. His failure to object at trial waives any claimed error on appeal. *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 137, 254 N.E.2d 453; *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 136, 94 N.E.2d 847.

■■■ Even were we to address the merits of the issue, it is clear from a fair reading of defense counsel's comments that he did not

imply that plaintiff's attorney or his expert was dishonest. Defense counsel's remarks concerning plaintiff's honesty appear to emphasize plaintiff's honesty for the purpose of accentuating plaintiff's failure to prove his case. This was particularly appropriate considering plaintiff was the only occurrence witness. Defense counsel's concession of plaintiff's honesty served to strengthen his argument that plaintiff did not prove that the mower moved and as such was appropriate under the circumstances.

Plaintiff next argues that it was error not to submit a general verdict form because he was entitled to a general verdict form pursuant to sections 2—1108 and 2—1201 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1108, 2—1201). He further maintains that separate verdicts placed undue emphasis on the effect of the statute of repose and it was error to submit the two interrogatories.

■■ Section 2—1108 provides, in pertinent part, that "[u]nless the nature of the case requires otherwise, the jury shall render a general verdict." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1108.) Under the circumstances present in this case, separate verdict forms were appropriate. Plaintiff presented two separate bases of recovery, negligence and strict liability. Defendant raised the statute of repose as an affirmative defense to the strict liability claim. Had the jury returned a general verdict in favor of plaintiff, defendant would have no way of determining whether the jury rejected or accepted his statute of repose defense. Likewise, had the jury returned a general verdict in favor of defendant, plaintiff would not know whether the jury had rejected its negligence claim outright or had misapplied the statute of repose to that claim. Under these particular circumstances, it was not error to submit separate verdict forms.

■■ Nor was the giving of the two special interrogatories improper. The function of a special interrogatory is to require the jury's determination as to one or more specific issues of ultimate fact and is a check upon the deliberations of the jury—it tests the general verdict against the jury's conclusions as to the ultimate controlling facts. (*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.) The period of repose is a specific issue of ultimate fact, and the special interrogatories were properly given to the jury.

■■ Finally, plaintiff maintains the trial court erred in denying his motion for judgment notwithstanding the verdict. Judgment notwithstanding the verdict should only be granted in those cases where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary ver-

dict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Having carefully reviewed the record, we find no basis to set aside the jury's verdicts and enter judgment for plaintiff.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GEIGER and INGLIS, JJ., concur.